IOWA STATE HIGHWAY COMMISSION, appellant, v. WILLIAM H. SMITH et ux., and CITY OF DES MOINES, appellees.

No. 49186.

(Reported in 82 N.W.2d 755)

MAY 7, 1957.

Norman A. Erbe, Attorney General, and Mitchell & Beving, of Des Moines, for appellant.

Milton W. Strickler, Anthony T. Renda and Leo S. Ballard, all of Des Moines, for appellee City of Des Moines.

Hansen, Wheatcraft & Galvin and Don C. Swanson, all of Des Moines, for appellees William H. Smith and Patricia Smith.

GARFIELD, J.—This is an action by the Iowa State Highway Commission (herein called the commission) against husband and wife (herein called defendants), owners of properties abutting a controlled-access highway, and the City of Des Moines (herein called the city) for declaratory judgment under rules 261 to 269 inclusive, Rules of Civil Procedure. The declaration sought is that limitations established by the commission and city upon access to the properties and prohibition of vehicular crossings, left turns and U turns, except at designated points, do not constitute "taking" property for which compensation must be made under Article I, section 18, Iowa Constitution.

Following trial to the court on stipulated facts it was adjudged the limitations upon access constitute such a taking

but the prohibition of crossings, left turns and U turns, except at designated points, by vehicles does not. Both the commission and property owners (defendants) have appealed.

Acting under chapter 148, Acts of the Fifty-sixth General Assembly, approved April 15, 1955, the commission and city designated Hubbell Avenue between certain points in Des Moines a controlled-access facility for public use. The designated strip carries traffic of U. S. Highways 6 and 65 and Iowa Highway 64.

Defendants William H. Smith and wife own two parcels of realty abutting Hubbell Avenue that are affected by this action of the commission and city. One tract has a frontage of 216 feet on the northerly side of Hubbell which runs northeast and southwest (nearer east-west than north-south). On, roughly, the east half of this tract defendants have a filling station with connected garage and café which caters primarily to heavy cross-country trucks. There is a space with a frontage on Hubbell of about 150 feet west of the filling station where trucks park and truckers sleep. About midway between the west end of the filling station and defendants' west property line, 65 feet back (north) from Hubbell Avenue, is a dwelling which they rent out. Just east of their 216 feet is a strip of ground, 50 feet due east and west, with a frontage of about 60 feet on Hubbell on which defendants have easement rights. (The difference between the 50 feet and 60 feet is due to the diagonal direction of the avenue.) This 50-foot strip abuts the west side of East Forty-second Street which runs due north and south and intersects Hubbell. The east part of the concrete approach to the gasoline pumps occupies the south part (nearly half) of this strip.

Up to now trucks have entered the filling station at any point from either east or west and left at any point in either direction. Under the combined action of the commission and city only two places of access to the filling station are permitted, each 34 feet wide. One of these places, which would doubtless be the entrance, is on the south part of the 50-foot strip east of defendants' property. The other, which would probably be the exit, is near the west end of the concrete approach to the gasoline pumps. These two driveways are 45 feet apart. The west one is about 155 feet east of defendants' west property line.

Also under action by the commission and city, traffic will be allowed to enter the filling station only from the east. Eastbound travelers may enter it only by making a U turn at East Forty-second Street and going back west a short distance to the east driveway. When leaving the station these travelers will be required to go west about 3168 feet to East Thirty-eighth Street and make a U turn there. No turns are permitted between 38th on the west and 42d on the east. Improvement of the highway calls for raised "jiggle" bars on the center line between designated turning points to deter turns at other places.

Defendants purchased their filling station property December 23, 1954, for $50,000 and then completely remodeled it to provide garage and café facilities. It is zoned "C-2" for commercial purposes.

The other property defendants own is their home with a frontage of 228 feet along the southerly side of Hubbell Avenue. The east line of this property is approximately 541 feet west of the west line of the filling station property on the north side of the avenue. Their dwelling house is 15 feet west of their east line and 120 feet south from the highway. It is about 140 feet from the house to the west property line. There are no buildings upon this part. It could be used as a residential site. It is zoned for residential purposes.

Up to now defendants have had unlimited access to this 228-foot frontage from either direction. However, the commission and city have now provided only a single point of access to it, 18 feet wide. The east side of this driveway is about seven feet west of defendants' east line. Thus there are approximately 203 feet between the drive and the west property line. Defendant William H. Smith is a contractor and has construction equipment stored adjacent to the residential property.

Heretofore defendants could cross Hubbell Avenue by motor vehicle between their home and business properties by driving from 500 to 600 feet. When the contemplated highway improvement is made they may cross only at East Thirty-eighth or Forty-second Street. The increased distance in traveling from their home to place of business and back again will approximate a mile. In the future the residence property may be entered from the

highway only when going east and upon leaving one must drive east as far as Forty-second Street. Westbound travelers desiring to enter the residence property will be required to go west to Thirty-eighth Street, make a U turn there and go back east to the driveway.

I. We consider first the commission's appeal from the portion of the judgment, adverse to it, which provides the restrictions upon access to defendants' properties constitute a taking thereof which must be condemned and paid for. There appears to be no controversy between the commission and city. The contest is between the commission and defendant Smiths.

It is now well settled in Iowa and we think in most jurisdictions that real property consists not alone of the tangible thing but also of certain rights therein sanctioned by law, such as the right to access—ingress and egress. It is clear owners of property abutting a street or highway cannot be deprived by public authorities of all access thereto without just compensation. As the commission concedes, such deprivation amounts to a taking of the property. Gates v. City of Bloomfield, 243 Iowa 671, 675, 53 N.W.2d 279, 281, and citations; Breinig v. Allegheny County, 332 Pa. 474, 2 A.2d 842, 847, 848; 39 C. J. S., Highways, section 141, pages 1080–82; 18 Am. Jur., Eminent Domain, section 183; 25 Am. Jur., Highways, section 154.

There is no claim defendants have been totally deprived of access to either tract. However, we have said several times that the destruction of the right of access or the substantial or material impairment or interference therewith by the public authorities is a taking of the property. Nalon v. City of Sioux City, 216 Iowa 1041, 1044, 250 N.W. 166; Liddick v. City of Council Bluffs, 232 Iowa 197, 232, 233, 5 N.W.2d 361, 379; Anderlik v. Iowa State Highway Comm., 240 Iowa 919, 923, 924, 38 N.W.2d 605, 607, 608; Gates v. City of Bloomfield, supra. Other authorities contain like statements. Petition of Burnquist, 220 Minn. 48, 19 N.W.2d 394, 397; Annotation, 22 A. L. R. 942.

In reliance upon what we have said in these cases defendants contend there is such a substantial impairment or interference with their right of access as constitutes a taking of their properties for which compensation must be made. This was apparently the view of the trial court. Although we have no

thought of receding from these precedents we do not regard them as controlling here.

In Nalon v. Sioux City, supra, a ditch was dug in the street abutting plaintiff's property which made access at any point difficult. The Liddick case holds the construction of a large viaduct in the street was such an interference with the rights of abutting property owners to access, light, air and view as amounted to a taking of their property. The Anderlik opinion, supra, applies the Liddick decision to property outside a city in front of which a high embankment was built. In Gates v. City of Bloomfield, supra, the city had authorized use of the street abutting plaintiff's property for parking large buses, taking on and discharging passengers and piling baggage. We held this was a nuisance for which the city was liable in damages.

None of these precedents considers the extent of the right of access to property from an adjoining street or highway. Certainly none of them holds an abutter is entitled, as against the public, to access to his land at all points between it and the highway.

It seems fairly well settled that, while access may not be entirely cut off, an owner is not entitled, as against the public, to access to his land at all points between it and the highway. If he has free and convenient access to his property and the improvements on it and his means of ingress and egress are not substantially interfered with by the public he has no cause for complaint. 39 C. J. S., Highways, section 141, page 1081; 2 Elliott, Roads and Streets, section 882, page 1153; Wegner v. Kelley, 182 Iowa 259, 265, 165 N.W. 449; Genazzi v. Marin County, 88 Cal. App. 545, 263 P. 825, 826; State Highway Board v. Baxter, 167 Ga. 124, 144 S.E. 796; State ex rel. Gebelin v. Department of Highways, 200 La. 409, 8 So.2d 71; Sweet v. Irrigation Canal Co., 198 Ore. 166, 254 P.2d 700, 717. See also Fowler v. City of Nelson, 213 Mo. App. 82, 246 S.W. 638.

There is, however, authority for the view an abutting owner is entitled to access to the highway at all points included within his frontage. In re Appropriation of Easement for Highway Purposes, 93 Ohio App. 179, 112 N.E.2d 411, 415, appeal dismissed 158 Ohio St. 285, 109 N.E.2d 3. See also Town of Tilton

v. Sharpe, 84 N. H. 393, 151 A. 452, 455; Article 3 Stanford Law Review 298, 300.

In accordance with what is said in Wegner v. Kelley, supra, at page 265 of 182 Iowa, and other authorities above cited, we hold defendants are not entitled to access to their properties at any and all points along Hubbell Avenue. But they are entitled to reasonable access or, as Wegner v. Kelley and other Iowa decisions say, to "free and convenient access" to their properties and the public may not deprive them thereof without just compensation.

Section 314.7, Code, 1954, provides that officers in charge of improvement on any highway shall not "destroy or injure reasonable ingress or egress to any property * * *." In considering this statute Perkins v. Palo Alto County, 245 Iowa 310, 314, 60 N.W.2d 562, 564, says: "The real question is whether the highway improvement destroyed reasonable ingress and egress at this corner gate." No reason is apparent why section 314.7 is not applicable here. However, regardless of whether it directly applies, it states substantially the rule that would govern in the absence of statute.

About the same result is reached by considering the commission's rights. It has the undoubted right, in the interest of public safety, to regulate the means of access to abutting property provided its regulations are reasonable and strike a balance between the public and private interest. And an abutting owner may make only such use of his right of access as reasonable regulations permit. Breinig v. Allegheny County, supra, 332 Pa. 474, 2 A.2d 842, 847, 848; Brownlow v. O'Donoghue Bros., 51 App. D. C. 114, 276 F. 636, 637, 22 A. L. R. 939, 941; Anzalone v. Metropolitan Dist. Comm., 257 Mass. 32, 153 N.E. 325, 327, 328, 47 A. L. R. 897, 902; 39 C. J. S., Highways, section 141, page 1082; 25 Am. Jur., Highways, section 154, page 449.

In determining whether limitations placed by the commission upon the number and location of access connections are reasonable the judgment of the commission is entitled to deference because of its superior knowledge of highway and traffic matters. But the commission's authority is not above that of the courts. See State ex rel. Gebelin v. Department of Highways, supra, 200 La. 409, 8 So.2d 71.

No hard and fast rule can be stated as to whether an abutting property owner has been denied access that is reasonable or, as we have said, "free and convenient." In most instances the question is one of fact, not of law, and its determination depends largely upon the evidence in the particular case. See Ridgway v. City of Osceola, 139 Iowa 590, 595, 596, 117 N.W. 974; Perkins v. Palo Alto County, supra, 245 Iowa 310, 315, 60 N.W.2d 562, 564; Town of Tilton v. Sharpe, supra, 84 N. H. 393, 151 A. 452, 454.

Defendants call attention to section 5, chapter 148, Acts of Fifty-sixth General Assembly, which provides in part: "Acquisition of property and property rights. For the purposes of this Act * * * highway authorities * * * may acquire private or public property rights for controlled-access facilities and service roads, including rights of access, air, view, and light, by gift, devise, purchase, or condemnation in the same manner as such units are now or hereafter may be authorized by law to acquire such property or property rights in connection with highways and streets within their respective jurisdictions. All property rights acquired under the provisions of this act shall be in fee simple. * * *."

In our opinion this provision has little bearing upon the determination of the present controversy. Chapter 148, sections 3 and 4, authorizes the establishment of controlled-access highways. Given such authority there is little doubt the commission would have the right to condemn property, including rights of access thereto, air, view and light, in the absence of section 5 just quoted. This is implicit from our decisions in Liddick v. City of Council Bluffs, supra, 232 Iowa 197, 5 N.W.2d 361, and Anderlik v. Iowa State Highway Comm., supra, 240 Iowa 919, 38 N.W.2d 605. However, the legislature may have been in doubt as to the existence of such right, especially as to rights of access, air, view and light, in the absence of express statutory authority. Rothwell v. Linzell, 163 Ohio St. 517, 127 N.E.2d 524, 527, 530, appeal dismissed 350 U. S. 1012, 76 S. Ct. 658, 100 L. Ed. 872.

In any event there is nothing in the quoted section 5 which requires the commission to institute condemnation proceedings where its action does not amount to a taking of prop-

erty or property rights. The statute confers no rights upon defendants it would not have in the absence thereof. They are not in more favorable position because of the existence of section 5.

Now to apply the foregoing legal principles to the facts here. So far as the filling station with connecting garage and café is concerned, we think defendants have not been deprived of reasonable or free and convenient access thereto. This conclusion seems unavoidable from our holding they are not entitled to unlimited access to their filling station at all points along the highway. Two driveways connecting such an establishment with a busy highway appear to be all that are reasonably necessary and are all that are usually found. Thirty-four feet seems to be sufficient width for such a driveway.

It may be the space between the two driveways was fixed at about 45 feet because that is the maximum length permitted for trucks and semitrailers upon Iowa highways under section 321.457(3), Code, 1954. Since the recent Fifty-seventh General Assembly has increased this length to 50 feet perhaps it would be a convenience to defendants and their truck customers to have the space between the two driveways increased to 50 feet. Doubtless the commission will be willing to do this. We think it should.

As to the dwelling which defendants rent out, in the large vacant space west of the filling station, after according due deference to the commission's judgment we are compelled to conclude reasonable access to this dwelling has been virtually destroyed. Certainly the tenant-occupants of this dwelling are deprived of free and convenient access to it. They have no means of ingress or egress except over the driveways between the filling station and the highway. There is no access to any other street. We think a driveway should be permitted for this dwelling from Hubbell Avenue or, in the absence thereof, just compensation must be paid for the taking of the right of access thereto.

In this connection it may not be amiss to observe that a lessee of premises abutting a highway has all the rights of access thereto of the owner during his tenancy. Royal Transit,

Inc., v. Village of West Milwaukee, 266 Wis. 271, 63 N.W.2d 62, 64, and citations.

Nor have defendants been deprived of reasonable access to their dwelling on the south side of Hubbell Avenue. However, they own about 140 feet west of their dwelling suitable for a residential site. It is zoned for residential purposes. No access to this ground has been allowed except at the extreme northeast corner of the residence property. The only way in which this driveway could be utilized as a means of ingress and egress for the residential site to the west is by constructing an outer roadway or private service road parallel to the south side of Hubbell Avenue between the residential site and the driveway the commission has provided.

Unless means of access are allowed this residential site its value is greatly diminished and it would be difficult to find a purchaser for it. We think a driveway should be permitted for this residential site or, in the absence thereof, just compensation should be paid for taking the right of access thereto.

If the commission and defendants cannot agree upon the amount of compensation, condemnation proceedings will be necessary.

We may observe the commission has not provided any outer roadways or "service roads", as chapter 148, Laws of Fifty-sixth General Assembly, calls them, parallel to Hubbell Boulevard at this point, so we have no occasion to consider what the effect of doing so would be.

As modified in accordance with the views herein expressed the judgment is affirmed on the commission's appeal.

II. We have no difficulty in disposing of defendants' appeal from the part of the judgment holding the prohibition of crossing the highway, left turns and U turns except at designated points where there are no raised "jiggle" bars does not constitute a taking of defendants' property within the law of eminent domain. The law on this phase of the controversy seems to be thoroughly settled by many recent decisions and the judgment must be affirmed on defendants' appeal. We shall not discuss the matter at length nor attempt to cite more than a few of the authorities that support our conclusion.

Such regulations as are imposed here on the movement of

traffic are almost universally regarded as reasonable. They facilitate more travel by more motorists in less time. They eliminate left turns and U turns, restrict the number of places where motorists may enter and leave the highway and practically eliminate collisions between vehicles going in opposite directions. Thus they greatly reduce sources of danger.

Insofar as the regulations may divert some traffic (mainly eastbound) from defendants' filling station they have no legal cause for complaint. They have no vested right to the continuance of existing traffic past their establishment. The requirement that defendants cross the highway only at designated places is imposed upon all members of the public. Once upon the highway defendants are treated no differently than all other motorists.

See in support of our conclusion on defendants' appeal: City of Fort Smith v. Van Zandt, 197 Ark. 91, 122 S.W.2d 187; Holman v. State of California, 97 Cal. App.2d 237, 217 P.2d 448; Jones Beach Boulevard Estate v. Moses, 268 N. Y. 362, 197 N.E. 313, 100 A. L. R. 487, and annotation 491; State ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N.E.2d 53; Nelson v. State Highway Board, 110 Vt. 44, 53, 1 A.2d 689, 118 A. L. R. 915, and annotation 921; Brady v. Smith, 139 W. Va. 259, 79 S.E.2d 851; 27 Washington Law Review 111, 120, 121.

The costs of appeal are equally divided between the commission and defendants.

Upon the commission's appeal the judgment is modified and affirmed. Upon defendants' appeal the judgment is affirmed.

All JUSTICES concur.