LEILA WARREN, appellee, v. IOWA STATE HIGHWAY COMMISSION (members), appellants.

No. 49577.

(Reported in 93 N.W.2d 60)

474

NOVEMBER 18, 1958.

REHEARING DENIED JANUARY 16, 1959.

Norman A. Erbe, Attorney General, of Des Moines, C. J. Lyman, Special Assistant Attorney General, Daniel T. Flores, Trial Counsel, and John L. McKinney, General Counsel, all of Ames, for Iowa State Highway Commission, appellants.

Killmar & Reynoldson, of Osceola, for appellee.

THOMPSON, J.—The defendants, the Iowa State Highway Commission and its members and certain of its officers, are en-

gaged in building National Interstate and Defense Highway No. 35 in a general north-and-south direction across Clarke County. The right of way of this highway is 300 feet wide. It crosses an east-and-west secondary road which runs between Sections 13 and 24, in Township 72 North, Range 26 West of the Fifth Principal Meridian, which the defendants propose to close at the intersection. The plaintiff owns a 40-acre tract in Section 24, the nearest point of which is slightly more than 200 feet east of the east line of Highway No. 35 where the secondary road will be closed on that side. This tract contains the home and is the homestead of the plaintiff and her husband. She owns a somewhat larger tract situated in Section 13 about one-fourth mile west on the same secondary road, which is used in connection with the homestead and as a part of the same farming operation. The secondary road has for many years been used as a convenient means of travel between the two tracts. Cattle have been driven back and forth and farm machinery has been moved regularly by means of this road.

It is obvious that the closing of the secondary road, both on the east and west sides of the 300-foot right of way of the No. 35 highway will prevent the use of the road as plaintiff has used it in the past. It will be necessary in order for her to travel or to move livestock or machinery between the two tracts to go from her homestead a short distance east to another secondary road, then south across the main line tracks of the Chicago, Burlington & Quincy Railroad to U. S. Highway No. 34, then west along this highway one and one-half mile to another secondary road running north and south, north along it, again crossing the railroad tracks, to reach an unimproved secondary road—probably an extension of the one which the defendants propose to close at the intersection with No. 35—then east along this road to the plaintiff's tract lying in Section 13. It is apparent that with the closing of the secondary road on each side of the right of way of No. 35 plaintiff will be compelled to substitute for the direct one-quarter-mile road between her lands a route something over three miles in length, with two crossings of a main line railroad, and much of the way over a considerably traveled east-and-west federal highway and across No. 35. This, the plaintiff thinks, constitutes a taking of her property

without just compensation, in violation of the provisions of the Federal and State Constitutions. Her immediate access to the secondary road is not impeded; but she contends that in a broad sense her right of ingress and egress to her two farms has been interfered with and she should have compensable damages and the obstruction of the secondary road should be enjoined until the defendants have taken proper steps to have such damages determined and paid. The trial court agreed with the plaintiff and granted an injunction as prayed.

We understand that the plaintiff is not contending that the secondary road may not eventually, and by proper procedure, be closed. We quote from her brief and argument: "In reality all she is asking for in this case is a forum in which she may file her claim for damages resulting from this road closure." It is her claim that the closing of the secondary, or county, road involved here is in effect a vacation of a portion of it, and should be governed by the procedure outlined in chapter 306 of the Codes of 1954 and 1958, entitled "Establishment, Alteration, and Vacation of Highways." Briefly, section 306.4 of this chapter gives to the board (in this case the Clarke County Board of Supervisors) or commission which has jurisdiction of a highway the power to "alter or vacate and close" such highway. Then follows, in sections 306.5, 306.6 and 306.7, an outline of the procedure to be followed, which requires the giving of notice. Section 306.8 provides for objections to the proposed procedure, and also contains this language: "Any person owning land abutting on a road which it is proposed to vacate and close, shall have the right to file, in writing, a claim for damages at any time on or before the date fixed for hearing." This provision is the keystone of the arch of plaintiff's case. She asserts the secondary road cannot be closed except by following the above sections, in which case her damages could be assessed and collected.

On the other hand, the defendants' position is that they are given the authority to close the road by chapter 306A of the Code of 1958. This entire chapter was added to our law by chapter 148 of the Acts of the Fifty-sixth General Assembly, which became effective July 4, 1955. The chapter is entitled:

"An Act to provide for highways to be known as controlled-access facilities." The section of greatest importance here is that part of section 306A.6 which we set out:

"The state or any of its subdivisions shall have authority to provide for the elimination of intersections at grade of controlled-access facilities with existing state and county roads, and city or town or village streets, by grade separation or service road, *or by closing off such roads and streets at the right of way boundary line of such controlled-access facility;* and after the establishment of any controlled-access facility, no highway or street which is not part of said facility shall intersect the same at grade." (Italics supplied.)

This statute, the defendants claim, gives them the right to close the existing secondary road at the right of way of Highway No. 35, which is admittedly a controlled-access facility, without resorting to the procedure provided by chapter 306. They also contend that the plaintiff has no such special damage through the closing of the road, different in kind from that suffered by the general public, as to give her a right to maintain this action.

It is evident there are two principal questions to be determined here: 1. Do the defendants have the right to close off secondary roads at their intersection with controlled-access facilities under the power granted by Code chapter 306A? 2. Will the plaintiff suffer such special damages as to permit her to maintain an action to recover them, or to enjoin the closing of the road until they are assessed and paid? We are of the opinion the first question must be answered in the affirmative, and the second in the negative. We shall discuss them in order.

I. It is settled in Iowa that public highways are created by statute, either directly or through power delegated to some subdivision of the State, that they may be discontinued in the same way, and no individual can acquire such vested rights against the State as will prevent the discontinuance of an established public road. Chrisman v. Brandes, 137 Iowa 433, 440, 112 N.W. 833, 835. Two methods may be used by the State to prevent access to a controlled-access facility: police power or eminent domain. In Iowa, it is evident the State is proceeding

through exercise of its police power. Section 306A.1, as enacted by the Fifty-sixth General Assembly, and as it now appears in the Code of 1958, says:

"Declaration of policy. The legislature hereby finds, determines, and declares that this chapter is necessary for the immediate preservation of the public peace, health, and safety, and for the promotion of the general welfare."

Generally, a taking through exercise of the police power is noncompensable; through eminent domain it is compensable. The State has clearly declared here its intention to proceed through its police powers. This is not a complete answer to plaintiff's contention, however; the exercise of the police power must be a proper and reasonable one, and must not amount to a taking of property without due process of law. We shall consider this matter further in connection with Division II.

■ The plaintiff says chapters 306 and 306A must be considered together; and section 306A.6 must be held to mean that the secondary roads may not be closed off except by the procedures provided by chapter 306, supra. We are unable to agree with this contention. Chapter 306 contains general statutes dealing with the Establishment, Alteration, and Vacation of Highways. Chapter 306A is a special statute governing Controlled-access Highways. The provisions of section 306A.6 are in conflict with those sections of chapter 306 which govern the closing or vacating of highways. It seems obvious to us that 306A.6 was enacted for a particular purpose, and to facilitate the building of controlled-access highways. The broad, road building program of the Federal Government requires the co-operation of the States, and speedy and effective means of acquiring rights of way, controlling access and regulation of traffic.

The plaintiff urges that section 306A.7 provides that authorities having jurisdiction and control over the highways of the State, as provided by chapter 306, may enter into agreements with each other or with the Federal Government "respecting the financing, planning, establishment, improvement, maintenance, use, regulation, or vacation of controlled-access facilities or other public ways in their respective jurisdictions." This is a broad authorization; but it does not reach the problem before us. It permits, but does not coerce, agreements concern-

ing highways. If plaintiff's theory is sound, then before a secondary road can be closed off at its intersection with a controlled-access facility, the board of supervisors or other body, such as a town or city council, having jurisdiction, must be importuned to proceed under chapter 306. There is no way provided in which the State Highway Commission, charged with control over the facility in accordance with the regulations of the Federal Government, can compel any action. If the supervisors or council proved recalcitrant, the entire Interstate and Defense Highway under construction would be at the mercy of the local authorities so far as preventing access from every city street and county road is concerned. It was suggested in oral argument that the Commission might declare any secondary road to be a primary road for the purpose of vacation; but we doubt the intent of the legislature to compel taking over numbers of secondary roads into the primary highway system for this purpose alone.

In short, it was the evident intent of the legislature to give the Commission power to close intersecting county or other secondary roads, or city or town streets, at intersections with controlled-access facilities, without going through the process required by chapter 306. Special statutes take precedence over general ones when they cannot be reconciled. Shelby County Myrtue Memorial Hospital v. Harrison County, 249 Iowa 146, 153, 86 N.W.2d 104, 109; Crawford v. Iowa State Highway Comm., 247 Iowa 736, 739, 740, 76 N.W.2d 187, 189; Iowa Mutual Tornado Ins. Assn. v. Fischer, 245 Iowa 951, 955, 65 N.W.2d 162, 165. We see no way in which section 306A.6 can be reconciled with the provisions of chapter 306 at this point, nor do we think the legislature intended any such result.

The power of public authorities to close off roads, when specifically authorized to do so by legislative enactment, has been recognized in other jurisdictions. The Oklahoma Supreme Court in Application of Oklahoma Turnpike Authority, 203 Okla. 335, at page 337, 221 P.2d 795, page 799, said that the power of the State is sufficient to enable it to close off roads which are not a part of a controlled-access facility. Cabell v. City of Cottage Grove, 170 Ore. 256, 130 P.2d 1013, 144 A. L. R. 286, while holding that the State had not specifically authorized the closing of

a city street at its intersection with a state highway, recognized that it might do so. It said: "The legislature, by virtue of its paramount and plenary authority, may close a street or may delegate such power to a city, though that power may not be constitutionally exercised without making compensation to property owners who suffer special injury as a result." See page 274 of 170 Ore., page 1020 of 130 P.2d. We hold that the Commission may close off state and county roads at their intersections with controlled-access facilities under the authority granted by section 306A.6, and without resorting to the procedure set up by chapter 306.

II. The plaintiff asserts that she will suffer a special injury from the closing of the secondary road, that the closing of the road will be a taking of her property rights, and if she is not in some manner compensated therefor a violation of the United States and Iowa Constitutions will result. It is evident that the closing of the road will put her to a considerable amount of inconvenience, additional effort, and expense. On the other hand, it is apparent that if intersecting secondary roads and city streets cannot be closed without payment to those who may suffer such inconvenience, who may be forced to travel by circuitous routes instead of the direct ways they formerly had, the expense to the general public will be tremendous. We are in the process of co-operating with the Federal Government in building several wide highways across the state, both north and south and east and west. They are a part of the National Interstate and Defense Highway system. They will inevitably cross many secondary roads and city and town streets, and numerous users of these latter ways will find themselves shut off, in part at least, from their accustomed convenient and 'direct means of going from place to place. Farmers, such as the plaintiff, will find they cannot reach their neighbors or shopping centers or, perhaps, other tracts of their own lands, without much additional travel. Businessmen on city streets may find customers unable to reach their establishments from one direction. Workingmen will be compelled to travel farther to reach their places of employment. Of course, the heavy expense of compensating those who suffer some special damage is not a sufficient reason for not paying such damage. Their property may not be taken

without fair compensation, if compensable damage they have. The problem is of great importance both to the public in its need for efficient highways and to those who may be affected by their construction.

Many Iowa cases have dealt with some facet of the question presented here. To the casual reader they may appear to be in confusion, and some in conflict with others. But we think the seeming contradictions are more apparent than real, and that upon careful analysis of the cases the true rule appears with reasonable certainty. It is that one whose right of access from his property to an abutting highway is cut off or substantially interfered with by the vacation or closing of the road has a special property which entitles him to damages. But if his access is not so terminated or obstructed, if he has the same access to the highway as he did before the closing, his damage is not special, but is of the same kind, although it may be greater in degree, as that of the general public, and he has lost no property right for which he is entitled to compensation. We turn to a consideration of the cases relied upon by the plaintiff at this point.

The first of these, and the one evidently considered of the greatest importance, is McCann v. Clarke County, 149 Iowa 13, 127 N.W. 1011, 36 L. R. A., N. S., 1115. This case professes to overrule Brady v. Shinkle, 40 Iowa 576, which held squarely that a landowner is not entitled to damages for the vacation of a section of a highway over which he is accustomed to travel, when his land abuts upon the highway but not upon the part vacated. This case was followed in Grove v. Allen, 92 Iowa 519, 61 N.W. 175, and McKinney v. Baker, 100 Iowa 362, 69 N.W. 683, which were also overruled in the McCann case. We think the court misunderstood the holding in the overruled cases, that it set up a straw man to be demolished, as shown by its language interpreting the Brady case. Actually the McCann case is not in conflict with the Brady case. It holds no more than that a highway running along the east and south sides of the plaintiff's land could not be vacated without payment of compensatory damages. It is evident that plaintiff's right of access to this highway was entirely cut off. This case was analyzed in the supplemental petition on rehearing in Heery v. Roberts, 186

Iowa 61, 73, 170 N.W. 405, 172 N.W. 161, in this language: "Under the McCann case, there may be a claim for damages on account of the vacation of a highway, if that highway be adjacent to a tract of land to which the owner has no other convenient means of access; * * *." In the McCann case roads immediately bordering plaintiff's lands were vacated, leaving him without reasonable means of access.

Other cases which plaintiff cites all come within the category of direct interference with means of access. In Long v. Wilson, 119 Iowa 267, 93 N.W. 282, 60 L. R. A. 720, 97 Am. St. Rep. 315, decided upon the pleadings, it was averred that defendants threatened to close all of a street abutting upon plaintiff's property, the only one through which he had convenient access, except for a strip thirteen feet wide, so that his right of access would be interfered with. Borghart v. Cedar Rapids, 126 Iowa 313, 101 N.W. 1120, 68 L. R. A. 306, concerned the vacation of a tract of ground over which the only access to plaintiff's property was available. The governing rule was well stated by Judge Ladd, at page 315 of 126 Iowa, page 1120 of 101 N.W.: "The abutter has a right, in common with the community, to use the street from end to end for the purpose of passage; but, in addition to this common right, he has an individual property right, appendant to his premises in that part of the street which is necessary. to free and convenient egress and ingress to his property."

In Hansell v. Massey, 244 Iowa 969, 972, 973, 59 N.W.2d 221, 223, we affirmed the rule of the Long case, supra, in these terms: "Thus the owner of land abutting a highway may suffer special damage because of its vacation. His right of access is property which cannot be taken from him without compensation. Likewise, special damage may be caused the owner of land so situated that it can be reached by no convenient way other than the vacated road." The case does not aid the plaintiff here.

Prymek v. Washington County, 229 Iowa 1249, 296 N.W. 467, also cited, holds only that plaintiff may recover damages when his right of access to his land across a strip in which he had an easement for travel was cut off by the vacation of a road.

Nalon v. Sioux City, 216 Iowa 1041, 250 N.W. 166, says that a property owner whose substantial access to her lot from

a public street is substantially interfered with is entitled to a jury determination as to her right to damages therefor. Other cases cited and relied upon by the plaintiff here do no more than affirm the rule quoted from the Long case, supra. None of them reaches the situation in the case at bar, where the right of access to the highway was in no manner impeded, but the road itself is to be closed at some distance from plaintiff's property so that its use by her will be impaired.

On the other hand, we have in several cases affirmed the principle of Brady v. Shinkle, supra. In the recent case of Iowa State Highway Commission v. Smith, 248 Iowa 869, 82 N.W.2d 755, we held that an adjoining property owner may not recover damage because of the placing of "jiggle" bars in the center of the highway adjacent to his premises, so that traffic on the opposite side of the street could not cross directly to his business establishment, nor could he cross to the other side, except by proceeding to the next intersection and making a U turn. We said (at page 880 of 248 Iowa, pages 761, 762 of 82 N.W.2d): "Insofar as the regulations may divert some traffic (mainly eastbound) from defendants' filling station they have no legal cause for complaint. They have no vested right to the continuance of existing traffic past their establishment."

Livingston v. Cunningham, 188 Iowa 254, 175 N.W. 980, is factually much like the instant case. The plaintiff's property did not abut on the road proposed for vacation, nor was his means of access in any way hampered. But the closing of the highway meant that in carrying on his business, which required him to obtain ice from the Des Moines River, it would be necessary for him to travel, in his hauling operations, some four miles by the next available public road instead of forty rods over the closed road. He asked that the closing of the highway be enjoined. In affirming a dismissal of his petition, we said, page 257 of 188 Iowa, page 981 of 175 N.W.: "It is not sufficient that the injury is greater in degree than that suffered by the public. It must appear that the kind of injury sustained is different from that suffered by the general public." And at page 258 of 188 Iowa, page 981 of 175 N.W., is this: "It is not shown that the obstruction of this highway in any way affects ingress or egress to his place of business, or to any lands owned by him.

484

* * * That he can reach the river by other routes open to travel is not disputed. It is the matter of convenience to him that is the gravamen of his complaint."

Bradford v. Fultz, 167 Iowa 686, 149 N.W. 925, concerned a complaint that a new road which a property owner would be compelled to use in place of a vacated one would not be as good a road and so her convenience of travel would be impaired. Her lands did not abut on the road to be closed, and it was held she suffered only such damage as the general public, and we reversed the grant of an injunction which had prevented the closing. The facts were much the same in Bryan v. Petty, 162 Iowa 62, 143 N.W. 987, and again we reversed a decree granting an injunction, saying: "On the other hand, we have held that one cannot enjoin the obstruction of a public highway where he suffers only such inconvenience or injury as is the same in kind with that of the general public, although it may be greater in degree as to the complainant." Page 64 of 162 Iowa, page 988 of 143 N.W.

In general, these cases hold that property which does not abut upon the portion of the road vacated, and the access of which to the general system of highways is not impaired by the vacation, is not specially damaged. This is the rule adduced from the Iowa cases discussed above, and is supported by a great number of authorities in other jurisdictions. Space will not permit an analysis of these cases. Cram v. Laconia, 71 N. H. 41, 51 A. 635, 57 L. R. A. 282, contains a thorough discussion of the principles involved; and see Kachele v. Bridgeport Hydraulic Co., 109 Conn. 151, 145 A. 756; Newton v. New York, New Haven & Hartford Railroad Co., 72 Conn. 420, 44 A. 813; Kinnear Mfg. Co. v. Beatty, 65 Ohio St. 264, 62 N.E. 341, 87 Am. St. Rep. 600; New York, Chicago & St. Louis Railroad Co. v. Bucsi, 128 Ohio St. 134, 190 N.E. 562, 93 A. L. R. 632; Holland v. Grant County, 208 Ore. 50, 298 P.2d 832; Hanson v. City of Omaha, 157 Neb. 403, 59 N.W.2d 622; Wilson v. Kansas City, Mo., 162 S.W.2d 802; Krebs v. Uhl, 160 Md. 584, 154 A. 131; Arcadia Realty Co. v. City of St. Louis, 326 Mo. 273, 30 S.W.2d 995; Ponischil v. Hoquiam Sash & Door Co., 41 Wash. 303, 83 P. 316; Olsen v. Jacobs, 193 Wash. 506, 76 P.2d 607; City of Lynchburg v. Peters, 145 Va. 1, 133 S.E. 674; Buhl

v. Fort Street Union Depot Co., 98 Mich. 596, 57 N.W. 829, 23 L. R. A. 392; Gerhard v. Seekonk River Bridge Commissioners, 15 R. I. 334, 5 A. 199; Wetherill v. Pennsylvania Railroad Co., 195 Pa. 156, 45 A. 658. Many others might be cited.

The principle evolving from the foregoing authorities is that one whose property abuts upon a roadway, a part of which is closed or vacated, has no special damage if his lands do not abut upon the closed or vacated portion so that his right of ingress and egress is not affected. If he has the same access to the general highway system as before, his injury is the same in kind as that suffered by the general public and is not compensable. It is damnum absque injuria. In the case before us, the plaintiff's right of access to the secondary road is not affected. She has the same means of ingress and egress as she had prior to the closing. The traveling public generally who have occasion to use the secondary road will find it much less convenient on many occasions. Some persons living along the roadway, or those who may wish to visit their lands lying along it, will be compelled to travel additional miles. Some will be shut off from their formerly direct route to the nearest city or town. They will be considerably inconvenienced in visiting these places for shopping purposes, or in taking their livestock or grain to market. Persons in the city or town desiring to visit farms along the road for business or social purposes must go farther and on other roads to reach their destinations which may lie on the other side of U. S. Highway No. 35. But they have no recourse in damages.

This is a common injury, inevitable in the building of highways, or in handling the traffic upon them. Many owners of motels, or gasoline stations, or other business establishments find themselves left in a by-water of commerce when the route of a highway is changed so that the main flow of traffic is diverted. A merchant or other businessman is cut off from prospective customers going in one direction when a street in front of his establishment is converted into a one-way thoroughfare. A divided highway, or one with "jiggle" bars or other obstructions in the center to prevent traffic crossing, has the same effect. But this gives the businessman no claim for damages against the authority which has installed the traffic regulators which injure

him. Iowa State Highway Commission v. Smith, supra; Wilson v. Iowa State Highway Commission, 249 Iowa 994, 1004–1006, 90 N.W.2d 161, 168.

It is apparent that the plaintiff here will suffer considerable inconvenience in being shut off from her previous direct access to her lands lying west of the point of closing the secondary road at its intersection with Highway No. 35. Her home property on the east of the intersection will lie in a cul-de-sac, and her travel can be only to the east instead of both east and west. Nevertheless her means of access to the general highway system is not impaired; that is to say, she has the same means of ingress and egress to and from her lands as before. Her damage is greater in degree than that suffered by the general public; but it is not different in kind, which is the ultimate test. The greatest good of the greatest number is the criterion which the authorities having charge of the building, alteration, and maintenance of the highway systems in the State must follow. In the absence of any showing of fraud or bad faith their judgment is final. It cannot be reviewed by the courts. Chrisman v. Brandes, supra, page 441 of 137 Iowa, page 836 of 112 N.W.; Spitzer v. Runyan, 113 Iowa 619, 622, 85 N.W. 782, 783, and citations. If it were not so, no highway system would be possible.

We conclude that the Iowa State Highway Commission was given the definite power under section 306A.6 to close the secondary road at its intersection with Highway No. 35; and that the plaintiff will suffer no compensable damage therefrom, and is not entitled to maintain this action. The trial court was in error in its decree and judgment.—Reversed.

All Justices concur.