Everett E. SIMKINS and Myrtle M. Simkins, Appellees,

v.

CITY OF DAVENPORT, Iowa, a Municipal Corporation, Appellant.

No. 56387.

Supreme Court of Iowa.

Aug. 29, 1975.

Richard A. Larsen and Stephen L. Schalk, of Larsen & Schalk, Davenport, for appellant.

Lane & Waterman, Davenport, for appellees.

Heard before MOORE, C. J., and MASON, REES, HARRIS, and McCORMICK, JJ.

MASON, Justice.

This appeal arises out of a condemnation trial in the Scott district court. The jury returned a verdict assessing damages in favor of Everett E. Simkins and his wife Myrtle M., the landowners, based on a partial taking of their property. The condemnor, City of Davenport, appeals from the judgment for costs and the ascertainment of damages in the amount of $105,000. Section 472.23, The Code.

Plaintiff, Everett E. Simkins, owns a service station located on the northwest corner of the intersection of Kimberly Road (State Highway 6) and Harrison Street (Northwest Boulevard) in Davenport. Plaintiff, Myrtle M. Simpkins, had a dower interest in the property.

During the summer of 1972, the City began the acquisition of land abutting Kimberly Road in order to widen the existing street, the major east-west thoroughfare in Davenport, to a divided four-lane highway. In this project Harrison Street was to be similarly widened to a divided four-lane highway. The construction involved the fee-title taking of 5,298 square feet along the front of plaintiffs' property on Kimberly Road, a construction easement for 1,678 square feet, the reduction of a 210 foot access on Kimberly Road to one 35 foot controlled access and reduction of two 35 foot accesses on Harrison Street to one 45 foot controlled access.

Negotiations between the parties broke down and the City convened a sheriff's jury pursuant to chapter 472, The Code, to appraise the property and assess damages. Plaintiffs were awarded $49,000. They appealed to the district court from the appraisal and award of damages claiming damages in the amount of $150,000.

The central issue presented by the City's appeal is the admissibility of certain evidence pertaining to the construction of median strips on the two streets as they affect the value of plaintiffs' property as a service station after condemnation.

Preceding trial in the district court the City filed a motion for advance ruling on evidence, wherein it sought to exclude evi-

dence relating to the median strips, since such placement is a reasonable exercise of the police power in the regulation of traffic and safety and is not a basis for compensable damage. The City furthermore wished to exclude evidence of the restriction of access to the service station as a measure of damage, since in the interest of public safety the City had the power to reasonably restrict such access. A third request, not relevant to the issues before this court, sought the exclusion of evidence pertaining to loss of profits. The trial court overruled the motion for the reason these matters could be controlled by proper instructions.

Plaintiffs then proceeded to present their case. Everett Simkins testified over objection as to the physical effect the *medians* would have upon the ingress and egress of vehicles at his station. He estimated the value of his property was 230 to 250 thousand dollars before the condemnation, and 70 to 80 thousand dollars afterwards. It was further adduced the property would have virtually no value as a service station due to reduced accessibility.

Plaintiffs' son, William, testified traffic traveling east on Kimberly Road would have no access to the station after the new construction and the entrance and exit from Harrison Street would be at best hindered. The witness communicated the extreme importance of access in relation to service station uses and stated the closing of the Harrison Street and Kimberly Road *accesses* would render the property worthless as a service station. It was related the adverse effect of *medians* on a service station in another part of town was tremendous and that another station actually closed.

Walter Wulf, a valuation expert for plaintiffs, testified over objection the *medians* would either put a service station out of business or would reduce business by 50 percent. He further testified over defendant's objection the medians when combined with the loss of access would render it impractical to use the property as a service station.

Martha Mae Allen, plaintiffs' expert on service station operations, testified that prior to condemnation there was no station in Davenport more attractive than plaintiffs' from a business standpoint. As access is of prime or vital importance to the maintenance of healthy service station business, Miss Allen declared she would neither recommend nor consider leasing the property after the condemnation. This opinion was repeated over objection when asked what she thought of the medians. The witness' skepticism was based on her personal knowledge of the effects medians and reduced access have on the service station business.

Upon cross-examination, Miss Allen agreed the loss of value would not be as great if only the medians were installed (i. e. without the reduction of access to the two streets). The witness knew of two stations whose business was damaged by the construction of medians.

Plaintiffs' principal evaluation witness was Edmond Fisher, who stated the before and after condemnation values of the property were $205,000 and $83,000, respectively. The damage, in other words, was $122,-000. Fisher opined there was no better service station site than plaintiffs' prior to the condemnation but stated the reduction in size of the facility as well as of the amount of access rendered a station use not the highest and best use after condemnation.

Upon cross-examination, Fisher said while he considered the median strips in his evaluation of the property, it did *not* change his outcome because the increased traffic would offset the medians' effect.

Kenneth Meeks, Iowa State Highway Commission engineer, testified over objection the medians on both streets ran well beyond plaintiffs' property. Meeks also stated the medians were designed for present needs, in addition to a projected 50 percent increase of traffic over the next 20 years.

On cross-examination, Meeks stated the purpose of medians and the limitation of access were for safety and that such were presently necessary at the instant intersection.

Defendant's evaluation witness, John H. Faris, stated the difference in value of the property before and after condemnation was $75,850. It was brought out on cross-examination the reduction of access would affect the property value. Furthermore, Faris admitted over objection the medians would affect the free flow of traffic in and out of the facility.

At the close of evidence, the trial court submitted instruction 11, which provided in pertinent part:

"* * * *

"It further appears without contradiction that the existence of the median strips is dictated in the area where they exist adjacent to the plaintiffs' property and for the declared purpose of providing safety and convenience to the traveling public. Therefore, you may not consider their existence, in and of itself, as a factor to be considered in determining the value of the property after condemnation, but you may give consideration to their existence because they do reduce the flow of potential traffic onto the plaintiffs' service station on both sides of the street in bearing upon whether the reduction in means of ingress and egress at the respective curb lines of his property was unduly impaired or lessened."

Defendant objected to the instruction as prejudicial in that no evidence had been introduced at trial showing the placement of the medians was arbitrary, unreasonable, or illegal. The trial court overruled the objection.

I. One of the items for which plaintiffs sought compensable damages on appeal to the district court was the loss of access to Kimberly Road and Harrison Street. Plaintiffs do not contend they have been totally deprived of access to these highways but insist defendant had materially or substantially impaired or interfered with their property rights in this respect.

■ Although a landowner whose property abuts upon a public highway is not entitled to access to his land at all points between it and the highway, such landowner does have a property right in the nature of an easement appurtenant to ownership of free and convenient ingress to and egress from his property to the particular highway upon which the land abuts which can neither be entirely taken from him nor substantially impaired or interfered with by governmental action without just compensation. *Iowa State Highway Comm. v. Smith*, 248 Iowa 869, 874–876, 82 N.W.2d 755, 758–759, 73 A.L.R.2d 680; *Jones v. Iowa State Highway Comm.*, 259 Iowa 616, 623, 144 N.W.2d 277, 281; *Linge v. Iowa State Highway Comm.*, 260 Iowa 1226, 1232–1233, 150 N.W.2d 642, 646–647; *Stom v. City of Council Bluffs*, 189 N.W.2d 522, 525–528 (Iowa 1971) and authorities cited in these opinions.

Both sides appear to recognize the foregoing principles. However, the controversy centers on the factors which may be considered by the trier of fact in measuring the landowners' compensable damages.

The record discloses a median strip dividing the four lanes on Kimberly Road extended from the intersection of Kimberly and Harrison Street approximately 735 feet west on Kimberly which was well beyond plaintiffs' property. A median strip dividing the four lanes on Harrison Street ran from the intersection of Harrison and Kimberly north on Harrison approximately 465 feet which was well beyond the north edge of plaintiffs' land.

The admission of testimony offered by plaintiffs regarding placement of median strips on Kimberly Road and Harrison Street gives rise to the first problem involved in the issue presented by this appeal.

We treat defendant's motion for advance ruling on evidence, previously referred to, as a motion in limine. As indicated, defendant contended in that motion the place-

ment of the median strips was a reasonable exercise of the police power of the state regulating traffic and safety and was not compensable.

■ A ruling on a motion in limine in and of itself does not serve as a basis for reversal on appeal. *State v. Hinsey*, 200 N.W.2d 810, 817–818 (Iowa 1972). This statement from *Twyford v. Weber*, 220 N.W.2d 919, 924 (Iowa 1974) is relevant in determining this contention:

" * * * [W]here the motion [in limine] is denied and opposing counsel attempts to ask the questions challenged in the motion or offer the prejudicial evidence covered therein, a proper objection at that time is necessary to preserve the right to complain on appeal that such questions asked or such evidence tendered were so prejudicial the mere asking or tendering would require a reversal. Stated otherwise, where the motion is denied the movant must base his complaint on the trial record."

This case does not present the factual situation before the court in *State v. Miller*, 229 N.W.2d 762, 765–768 (Iowa 1975).

In another argument defendant maintains plaintiffs' evidence regarding placement of median strips on these two highways was irrelevant to the issue of plaintiffs' damages alleged to have been sustained as a result of substantial impairment or interference with their right of access.

■ In the present case defendant preserved its right to complain on appeal by urging proper objections to the challenged evidence when the same was tendered during trial.

As indicated, defendant had alerted the trial court and opposing counsel by its motion in limine that it was the City's position the median strips involved had been installed in the proper exercise of its police power, hence any impairment or interference with plaintiffs' right of access was not compensable.

Plaintiffs in seeking to uphold the ascertainment of damages maintain that once defendant made known its theory why any alleged interference or impairment of plaintiffs' right of access was not compensable evidence tending to show defendant's actions in installing the median strips were so arbitrary and unreasonable as to go beyond the police power of the state was relevant to the amount of compensation for the diminished access to Kimberly Road and Harrison Street. Plaintiffs cite and rely on *A and S, Inc. v. Iowa State Hgwy. Comm.*, 253 Iowa 1377, 1389–1390, 116 N.W.2d 496, 503 and *Warren v. Iowa State Highway Comm.*, 250 Iowa 473, 478, 93 N.W.2d 60, 63, as support for their position.

Defendant attacks this contention in its written brief and argument in this court by steadfastly maintaining the median strips were installed in the area of plaintiffs' property to regulate the flow of traffic on Kimberly Road and Harrison Street under its police power. Defendant in effect contends the installation of the median strips constituted a regulation and control of plaintiffs' right of access as is proper under the exercise of its police power. Defendant's argument would necessarily lead to the conclusion evidence of the existence of the median strips was irrelevant and therefore inadmissible for consideration by the trier of fact in determining the elements of compensable damages in ascertaining the value of plaintiffs' property after condemnation.

Defendant cites as support for its contention *Iowa State Highway Comm. v. Smith*, 248 Iowa 869, 82 N.W.2d 755, 73 A.L.R.2d 680; *Wilson v. Iowa State Highway Comm.*, 249 Iowa 994, 90 N.W.2d 161; *Warren v. Iowa State Highway Comm.*, 250 Iowa 473, 93 N.W.2d 60; and *Nelson v. Iowa State Hgwy. Comm.*, 253 Iowa 1248, 115 N.W.2d 695. These decisions are referred to in *A and S, Inc. v. Iowa State Hgwy. Comm.*, 253 Iowa 1377, 116 N.W.2d 496.

The following statement from Note, Controlled-Access Highways in Iowa, 43 Iowa L.Rev. 258, 264, cited with approval in *A and S, Inc. v. Iowa State Hgwy. Comm.*, 253

Iowa at 1386, 116 N.W.2d at 501, fairly summarizes many of the principles of law recognized in the cited cases:

"It may be noted that in the general area of public safety it is well settled that the regulation of highway traffic comes under the police power. Such regulations have included the prohibition of left and U-turns, the prescribing of one-way traffic and the separation of traffic lanes. Moreover, traffic controls, road design and highway relocation, giving rise to 'circuity of travel' and 'diversion of traffic,' have generally been held to constitute a valid exercise by the state of its police power."

The writer of the note tells us in footnotes 44 and 45, " 'Circuity of travel' is the term used to designate the additional distance which an abutting owner must travel in his use of the highway, e. g., where one living on the southbound side of a divided street desires to go north. 'Diversion of traffic' is the term used to designate the reduction or increase in the volume of traffic on the highway fronting the property owner as a result of changes in the highway system."

At another point in argument the City urges the installation of the median strips as control devices being a valid exercise of the police power was never questioned by any evidence in the record.

■ Granted the installation of median strips for the purpose of regulating the flow of traffic is within the exercise of police power, the question is whether in a given circumstance a particular action of the condemning authority in the exercise of that power was proper and reasonable. It must not amount to taking of property without due process of law. *Warren v. Iowa State Highway Comm.*, 250 Iowa at 478, 93 N.W.2d at 63.

As pointed out, a landowner whose property abuts upon a public highway is not entitled to access to his land at all points between it and the highway but is entitled to reasonable and convenient ingress to and

egress from his property to the particular highway upon which the land abuts.

"No hard and fast rule can be stated as to whether an abutting property owner has been denied access that is reasonable or, as we have said, 'free and convenient.' In most instances the question is one of fact, not of law, and its determination depends largely upon the evidence in the particular case. * * * [citing authorities]." *Iowa State Highway Comm. v. Smith*, 248 Iowa at 877, 82 N.W.2d at 760. See also *Stom v. City of Council Bluffs*, 189 N.W.2d at 526.

■ Evidence of the existence of the median strips would be admissible as relevant, not as a substantive element of damages, but for the purpose of showing the effect of the loss or impairment of access on the value of plaintiffs' property after condemnation in the presence of median strips.

■ Where there is substantial competent evidence the regulatory measure entirely deprives the landowner of this reasonable and convenient access or substantially or materially impairs or interferes with such access the trier of fact would be justified in finding the landowner had established the exercise of the police power was so arbitrary and unreasonable as to be beyond the police power of the condemning authority.

The trial court was correct in admitting evidence of the existence of the median strips for the limited purpose permitted by its instructions.

II. Defendant complains in another portion of its written brief and argument that there was a large amount of evidence admitted over its objections relative to the existence of the median strips which included prejudicial references to noncompensable losses under the legitimate exercise of the police power.

Plaintiffs, on the other hand, contend defendant waived any error arising from the admission of this evidence by introducing substantially the same evidence during cross-examination. As bearing on this con-

tention see *Vine Street Corporation v. City of Council Bluffs*, 220 N.W.2d 860, 862 (Iowa 1974) and *Goodale v. Murray*, 227 Iowa 843, 861, 289 N.W. 450, 459, 126 A.L.R. 1121.

In any event, we prefer not to base our decision in this matter on a determination of the correctness of this contention.

■ Assuming prejudicial evidence concerning property loss due to construction of median strips in front of plaintiffs' property was admitted at trial and further that defendant did not waive objections to this testimony by its cross-examination of plaintiffs' witness, the question is whether the court's instructions served to remove and thus render harmless and nonprejudicial any error in the erroneous admission of such testimony. *Interstate Finance Corp. v. Iowa City*, 260 Iowa 270, 277, 149 N.W.2d 308, 313.

We have previously called attention to a part of defendant's objection to instruction 11. The City objected to the instruction for the further reason that "the consideration of any evidence in regard to said median strips which has been introduced in this trial will be prejudicial to the Defendant's case." Perhaps when these objections are considered with the matters urged by defendant in its motion in limine the trial court was sufficiently alerted to defendant's complaint. Rule 196, Rules of Civil Procedure.

■ Of course, the instructions must be read together and related to each other to determine the rights of the parties. *Bauman v. City of Waverly*, 164 N.W.2d 840, 845 (Iowa 1969).

In instruction 6 the jury was told:

"The owner or owners of property are not entitled, as against the public, to access to their property at any and all points between it and any highway; they are entitled only to reasonable and convenient access to their property; and if there is a substantial or material impairment or interference with the right of access the abutting owner or owners are entitled to just compensation therefor."

In instruction 9 the court further told the jury:

"If, in this case, you find by a preponderance of the evidence that a substantial or material impairment or interference will result to the rights of ingress and egress to and from plaintiffs' property from Kimberly Road and Harrison Street as it was before the condemnation, this will be a factor in determining the value of the property after condemnation. But, if you fail to so find, you will give no consideration to the matter of access."

Defendant made no objections nor took any exceptions to either of the foregoing instructions.

In instruction 11 the jury was admonished not to consider existence of the median strips, in and of themselves, as a factor in determining the value of plaintiffs' property after condemnation but were told they might give consideration to their existence as bearing on whether the reduction in means of ingress and egress of the respective curb lines of plaintiffs' property was unduly impaired or lessened.

■ We are satisfied any alleged error in the admission of testimony offered through plaintiffs' witnesses relating to the existence of the median strips was cured by the trial court's instructions and no prejudice resulted to defendant.

We have considered all contentions raised by defendant on its appeal and find no error requiring reversal.

The case is therefore—Affirmed.