CLARA M. PRYMEK et al., Appellants, v. WASHINGTON COUNTY, Appellee.

No. 45407.

FEBRUARY 18, 1941.

Robert L. Larson and Baldrige & Bailey, for appellants.

Richard A. Stewart, County Attorney, for appellee.

MITCHELL, J.—This is an action at law to recover damages to plaintiffs' land resulting from vacation of a public road, the claim for such damage being based on ownership of an easement over a tract of land between the plaintiffs' land and the vacated road. The County filed answer denying each and every allegation of plaintiffs' petition and specifically denied that the plaintiffs had an easement or right of way from the vacated road to the plaintiffs' land. Also by way of defense the defendant plead that if the plaintiffs had an easement or right of way as alleged, the same has now been abandoned and has ceased to exist.

At the close of the evidence the defendant's motion for a directed verdict was sustained and the plaintiffs have appealed.

In order that a clearer understanding of the facts may be had, we insert appellants' Exhibit A.

On August 2, 1939, the board of supervisors of Washington County passed a resolution formally vacating all that part of road Number 17 in Highland township, which is identified on Exhibit A by dotted lines. Appellants are the owners of real estate designated as Tract A consisting of 40 acres upon which they lived; Tract B consisting of 20 acres; Tract C consisting of 20 acres; Tract D consisting of 100 acres and Tract E consisting of 30 acres. The land is used for farming purposes and is operated as one unit.

In order to get from Tract A on which appellants live to Tracts C and D, they used the public road from Tract A down to point X on the vacated road and then the private roadway indicated by the line between points X and Y, from the vacated road to the east line of Tract D. The only buildings located on Tracts C and D consisted of a log house and an old corncrib.

Davis Creek, which starts 10 or 12 miles to the west and passes in an easterly direction through Tract C and empties into Iowa river to the east, is about 50 to 60 feet wide from bank to bank and 6 to 10 feet deep where it passes through Tract C and about the same size for several miles both east and west of said tract. There is a cliff along this creek which is from 60 to 100 feet high through Tract C and about the same height for some distance both east and west of the same.

Haw Run, which starts several miles southwest of Tract D and passes through said tract and joins Davis Creek a short distance below the Davis Creek bridge on the vacated road, is about 6 to 10 feet in width and 3 to 8 feet deep where it passes through Tract D and about the same width and depth east to where it joins Davis Creek and about the same for approximately 3 miles west of Tract D. The cliff along Haw Run is about 40 to 60 feet high east of Tract D and about the same height for about 3 miles west of Tract D. Both of these cliffs are very steep and

both of the streams are running streams that overflow in high water.

It is impossible to cross either of the streams with farm machinery excepting where they are bridged, and it is impossible to get the necessary farm machinery up and down the cliffs along either stream excepting where there are public roads.

Consequently, it is physically impossible to get to Tracts C and D with farm machinery unless the approach is made between the two streams and either from the east or the west. It would be possible to reach the west side of Tract D from the west by going over one-half mile of privately owned property from the public road running north and south between Sections 2 and 3, Township 76 north, Range 6 west of the 4th P. M. For the plaintiffs this would mean a distance of about 4½ miles from where they live on Tract A, whereas, the distance they used up until the time of the vacation of the road in going from Tract A to the east side of Tract D and using the private roadway XY was about 1½ miles. The other physical possibility of reaching said tracts is to approach between said two streams from the east and passing over privately owned property from the vacated road to the east side of Tract D at or near the private roadway marked XY on Exhibit A. The part of the road that was vacated took away the public roadway up and down the cliffs along Davis Creek and Haw Run and the bridges across said two streams on the road lying to the east of Tract D.

And so we find by the vacation of the road, the appellants have no way of traveling from the place they live to the land they owned and have farmed known as Tracts C and D in this record, except by crossing of privately owned property over which they have no right of way. That they have been damaged can hardly be questioned.

Appellee argues that under the law of Iowa no recovery can be had for the vacation of a country highway unless the property for which damage is claimed abuts said highway.

In Nalon v. City of Sioux City, 216 Iowa 1041, 1044, 250 N. W. 166, 167, this court said:

"* * * there is ample authority in support of the rule that,

even where the provision is only for compensation for the *taking* of property, there may be a taking of property by preventing or substantially interfering with the owner's access to his property from a public street.''

In the recent case of Dawson v. McKinnon, 226 Iowa 756, 770, 285 N. W. 258, 265, there is a very able discussion of this question by Justice Bliss. We quote:

''It is our judgment that the defendant commissioners have taken the larger part of the drive, street, or way over which the appellant had an easement, and that in doing so they have destroyed a property right which she had therein, and have very seriously interfered with and impaired the access which she had to and from her land, causing her damage which she is entitled to have established in the manner required by law.''

Appellee argues that the cases cited are exceptions to the general rule and apply only in the case of the vacation of a street in a city or town, and do not apply to highways in the country. While it is true that most of the cases apply to city streets there is no reason why the same rule should not apply to country highways. It may be true that at one time this court made a distinction in the application of the rules as between country roads and city streets but it recognized that it was in error.

In McCann v. Clarke County, 149 Iowa 13, 16, 127 N. W. 1011, 1012, 36 L. R. A., N. S., 1115, 1119, this court said:

''It goes without saying that the value of the land is materially lessened by cutting off convenient access thereto, just the same as is the value of a city lot. The distinction attempted in the Brady case cannot be sound, and it should not be longer approved or followed. In Long v. Wilson, supra, which involved the vacation of a street, we did not think it necessary to overrule the Brady case, and hence distinguished it along the line pointed out in the former, and because the land reverted in highway vacations. But, now that the question relates solely to the vacation of a country highway, we are convinced that no

sound distinction can be made between the two conditions, and that the Brady case and those following it, which are based entirely on its reasoning, should be overruled.''

Since the decision in the McCann case, the Iowa court has consistently joined with courts in other jurisdictions in applying the general rule to cases involving country roads the same as is applied in cases involving city streets. See Furgason v. Woodbury County, 212 Iowa 814, 237 N. W. 214.

So if this record shows that there is competent evidence upon which a jury could find that the appellants had an easement over the land designated on Exhibit A as the line from ''X to Y'', then they are entitled to recover the amount they have been damaged, there being no question but that they have been damaged.

Appellee cites the case of Harris v. Brown, 184 Iowa 1288, 1294, 169 N. W. 664, 666, in which this court said:

''The possession, to be adverse, must not only be actual, continuous, visible, notorious, and distinct, but *hostile,* and under claim of right or color of title. The burden of showing adverse possession rests upon the person who asserts title upon that ground. The presumptions are all in favor of the holder of the legal title.''

Appellee first contends that the possession of the easement was not actual because the same was not fenced and because the owner of the dominant estate did not pay taxes on the same.

The cases are uniform in holding that fencing of the right of way and payment of taxes thereon are not essential.

Appellee further contends that the possession was not actual because it was not always in the very same actual location, that is, when the track got rutty or when the users came to stumps, they turned out and made another track and that after a sawdust pile accumulated on one end of the private road in 1938, appellants, on occasions, used another route to get to their land.

But the evidence is in conflict on the actual location of the roadway. For better than 30 years, the driveway designated as X to Y on Exhibit A was used by the owners and those farming, Tracts C and D.

Certainly, it is not contemplated that each time a wagon

or piece of farm machinery was driven over the private roadway that it should in each case take exactly the same track as was made by other vehicles and machinery which had been previously driven through, and the fact that they varied a few feet or the width of a wagon would certainly not prevent the possession from being actual.

There is evidence that there was a gate at point X and a gate at point Y and a well-beaten, clearly visible roadway between the two gates used by all of the owners of Tract D and persons who had occasion to go to Tract D during all the time from 1906 down to the time of the vacation of the road.

It is next contended that the possession is not visible and the possession was not continuous. With this we cannot agree. There was evidence that the roadway was visible all of these years, and that it was used continuously.

Appellee argues that the possession was not notorious, not hostile and there was no evidence of a claim of right or notice of same to the owners of the servient estate.

It is, of course, true that mere use in itself is not sufficient to establish the easement. The use must be under color of title or claim of right. In this case ample evidence of claim of right is shown.

The record shows that about 22 or 23 years ago Joe Wieland, who was contemplating the purchase of the north 80 acres of Tract D from one Tom Prehoda, went to Sydney Coon to inquire about the right of way across Coon's land and Mr. Coon told him that the right of way across his land went with the Prehoda land and that all he, Wieland, would have to do was to keep up the gates at points X and Y. Relying on this statement, Wieland bought the Prehoda land and kept up the gates at points X and Y and used the right of way to gain access to Tract D so long as he continued to own the same.

Lewis Coon and Ira Coon, sons of Sydney Coon, took the land between the vacated road and Tract D by inheritance from their father at the time of his death in 1922. Henry Prymek used this private road to gain access to Tracts C and D after he purchased them and had a conversation with Lewis Coon concerning the private road. He told Lewis Coon he wanted

them to fence the private road to keep his cattle from mixing with other cattle when he drove his through. Lewis Coon told him that he, Prymek, had a right to use this road and that the prior owners of Tract D had always had a right to use it but that he would rather that said roadway be not fenced.

Henry Prymek kept up the gates at points X and Y and, on one occasion, someone set fire to the tree which supported the gate at point X and burned said gate and Prymek put in a new gate. He also put in a new gate at point Y.

Henry Prymek also did road work on the private road many times whenever it needed it.

There was no question but what the owners of Tracts C and D had the right to use the private driveway between X and Y until 1938, when Carson Sweeting bought the servient estate. This was 32 years after the original grant and after the use of the roadway had started. The rights of the parties had been fixed, the existence of the gates at Points X and Y, and the roadway clearly visible from Tract D running between the gates constituted notice to Carson Sweeting, at least there was sufficient evidence on which the jury could have so found.

But appellee claims that if there was an easement, it had been abandoned. Sweeting testified that after he bought the land, Henry Prymek offered to buy a right of way and to pay $25 for same. Prymek denied that he ever made any such offer. As to the abandonment there is a conflict in the evidence, and it was for the jury to decide.

We are convinced that there is sufficient evidence as to the question of whether there was an easement across the land, between the points X and Y to submit the question to the jury, and the lower court erred in sustaining the motion to direct. It necessarily follows that this case must and it is reversed.— Reversed.

CHIEF JUSTICE and all JUSTICES concur.