STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Respondent,

v.

Leo J. DOCKERY et al., Exceptions of Joseph Meissner and Estelle Meissner, Appellants.

No. 47490.

Supreme Court of Missouri, Division No. 1.

Nov. 14, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 12, 1960.

Albert L. Felberbaum, Walter S. Berkman, St. Louis, for defendants-appellants.

Robert L. Hyder, Melvin Englehart, Jefferson City, for respondent.

COIL, Commissioner.

This is a condemnation case in which commissioners awarded defendants Joseph and Estelle Meissner $25,500 and, upon a trial of their exceptions, a jury awarded them $25,000. Plaintiff's evidence tended to show that the fair market value of the property in question at the time of taking, November 28, 1955, was from $19,000 to $21,000, and defendants' evidence tended to show that such value was as much as $49,500. We, therefore, have jurisdiction because of the amount in dispute.

Defendants' property consisted of two adjoining brick buildings at 1419–25 North Broadway in St. Louis, with frontage on Broadway of 86 feet. They extended about 102 feet westwardly to Sixth Street. Defendant Joseph Meissner operated a garage in the north and in part of the south building, and the front portion of the south building was rented to a tenant who was in the produce business. The property was located near an area known as "commission row."

Defendants contend first that the trial court erred in excluding from evidence and in refusing to permit defendants' counsel to read excerpts from a book titled "The Wholesale Produce Market at St. Louis, Mo.," which indicated on its cover and first page that it had been prepared by the Marketing Facilities Branch of the Production and Marketing Administration of the United States Department of Agriculture in cooperation with the Missouri State Department of Agriculture in June

1949, and that funds appropriated under the Research and Marketing Act of 1946 had been used in making the study and report reflected in the mimeographed pamphlet or book. While at the trial defendants' counsel sought to read several indicated excerpts pertaining to various matters, apparently defendants' present complaint is directed to the exclusion of the excerpts here noted.

Defendants' counsel sought to read this portion from the second paragraph of the book's preface: "Several years ago a plan was developed by the Missouri Highway Department in cooperation with the city of St. Louis for bringing a superhighway through the city to alleviate traffic congestion, connect highways to certain bridges across the Mississippi River, and to connect with certain other bisecting streets and highways. This development had been under consideration for a number of years. Because it was not possible to obtain building materials, the plan was more or less dormant until 1946. During the latter part of that year it became known that materials would be available for the highway development, and the general location of the highway was determined by engineers. In the development of the highway, a part of the present wholesale market facilities will have to be razed. Members of the St. Louis Wholesale Fresh Fruit and Vegetable Jobbers Association felt that something should be done to relocate and establish new market facilities prior to the construction of the proposed highway. Therefore, early in 1946, this association appointed a Market Study Committee to determine what action they might take to provide a new wholesale produce market. Because the members of the committee were aware of the difficulties to be encountered in developing new market plans and knowing that services would be available for making such studies, they extended an invitation to the Marketing Facilities Branch, Production and Marketing Administration, U. S. Department of Agriculture, early in the fall of 1946, asking the Branch to make a wholesale market survey."

And this appeared in the summary and conclusions, apparently preliminary to the study, a portion of which defendants' counsel sought to read: "The city of St. Louis will have to relocate its wholesale produce market within the near future because of plans for the construction of a highway through the existing market area and a bridge across the Mississippi River. These projects will cause the razing of a substantial part of the present market facilities. For some years prior to the plans for these recent developments, various groups, such as trade and civic organizations, the State Department of Agriculture, the University of Missouri, and railroad companies, had manifested an interest in the building of a new market in order to preserve and expand the position of St. Louis as an important wholesale market center for perishable produce." And, on page 2 of the study, it was pointed out that in the development of the wholesale produce business in St. Louis the area occupied by those in the business had expanded and buildings were in use on streets bordering the original North Third Street area.

Defendants' specific reason for their contention that the trial court erred in excluding the exhibit and refusing to permit excerpts from it to be read is that inasmuch as the information quoted above was "common knowledge among the tenants and property owners in Commission Row who acted upon" it and abandoned the row and relocated elsewhere, thereby affecting the use to which defendants' property could be put and affecting its value on the date it was taken, the jury was entitled to know and consider that fact.

As we understand from their brief, however, defendants seek to present the question, whether the state highway commission can, by disseminating in advance information that it intends to build a highway in a certain place, thereby reduce property values in the area, and at a later

date acquire the necessary property at a reduced value without compensating the owner for his loss.

■ Whatever the answer to that question is or should be, and we do not explore it, it is apparent that the trial court did not err in excluding the book. The trial court ruled correctly because there was no showing by defendants that the publication, obviously hearsay in so far as the plaintiff was concerned, was a publication admissible under any exception to the hearsay rule. Defendants made no effort to show that plaintiff had had anything to do with the book or had concurred in any of the statements therein; nor did defendants show that the book was based upon reliable sources of information or that it had been prepared for use of a trade or that it was generally regarded by a trade as trustworthy and reliable. Baker v. Atkins, Mo.App., 258 S.W.2d 16, 20 [8-10]. And defendants did not show that the book had the status of a published document purporting to have been "edited or printed by authority of congress." Section 490.150 RSMo 1949, V.A.M.S.

Furthermore, the contents of the excerpts do not support the reason defendants now assert for the excerpts' materiality, i. e., the excerpts do not tend to show that the highway commission, by disseminating advance information as to the location of the highway, reduced property values in the area and later acquired the property at reduced values. Moreover, even if the excerpts had been read in evidence, and even if the substance of them had tended to support defendants' theory still defendants' expert testimony as to value was not based upon any such theory and defendants' damage instruction did not include any such hypothesis. So that, in any event, the offered evidence would have been wholly irrelevant and immaterial on defendants' recovery theory.

In their reply brief, defendants indicate that the book and the excerpts from it were admissible to show that certain matter was published irrespective of its truth or falsity. Defendants' theory, however, did not involve the question whether the proffered matter was published in the particular book; the book admittedly was offered to show that the reason commission row relocated was that published plans by the highway department called for the razing of buildings in that area.

■ Our ruling that the court correctly excluded the evidence in question also adversely determines defendants' further contention that the trial court erred in refusing this instruction C: "The Court instructs the jury that the fair market value of the property in question is to be determined in view of all the facts in evidence in connection with those of general notoriety." That is because, irrespective of other reasons justifying its refusal, the instruction could have been relevant, if at all, only in the event the so-called "facts of general notoriety" as contained in the excerpts from the book, exhibit 9, had been received in evidence.

Defendants contend that the trial court erred in admitting evidence of other sales of property in the area in question because there was no showing that such sales were voluntary, i. e., "effected between a willing seller not forced to sell and a willing buyer not forced to buy." During the direct examination of one of plaintiff's expert witnesses on value, and after the witness had indicated that his conclusion was based in part on the so-called "summation approach," he indicated that there had been similar land sold in the area but that he had found no comparable sales which included both land and improvements. The witness said he was familiar with the property involved in such similar land sales but that his knowledge of the sales price came solely from examining the revenue stamps attached to the deeds and further that he had no personal knowledge as to the circumstances surrounding the sales, i. e., whether they were voluntary.

Plaintiff's other expert on value also testified to a similar sale or similar sales in the area but knew nothing of the condition or circumstances surrounding them.

Defendants on this appeal include in their contention the proposition that it was improper to permit the witnesses to state the amount of the sales prices of the similar properties based solely on the amount indicated by the revenue stamps which had been affixed to the deeds. That part of defendants' contention has not been properly preserved for appellate review because not included in defendants' motion for new trial. The only new trial assignment relating to the admission of evidence as to similar sales is that the trial court erred in permitting evidence of sales of alleged comparable real estate because the sales were not shown to have been voluntary.

█ It is well established in this state that the sales price of similar property in the vicinity of the land condemned where the sale is reasonably close in point of time to the date of taking, is admissible evidence on value, City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W.2d 853, 856 [5]. The rule, however, should include the proviso that the sale was voluntary in the sense that the seller and buyer was each capable and desirous of protecting his interest. State ex rel. State Highway Comm. v. Rauscher Chevrolet Co., Mo., 291 S.W. 2d 89, 92, 55 A.L.R.2d 773.

It may be conceded for present purposes that the testimony in question concerned sales of similar land in the vicinity of the land to be condemned and that the dates of the sales were reasonably near to the taking in point of time. The exact question then is whether the trial court erred in admitting this testimony when the witnesses conceded that they did not know the circumstances surrounding the sales and plaintiff did not otherwise affirmatively prove that the sales were voluntary. We find no Missouri case which has considered or passed on this question. It has

been generally held that when evidence of similar sales is offered as tending to establish the value of the property at the time of taking, the offerer has the burden of proof to show that the sale was voluntary as well as that the property was located in the same vicinity and that the sale was reasonably near to the taking in point of time. Hannan v. United States, 76 U.S.App.D.C. 118, 131 F.2d 441, 442 [3, 4]; Wright v. Commonwealth, 286 Mass. 371, 190 N.E. 593, 594 [4–8]; Kankakee Park Dist. v. Heidenreich, 328 Ill. 198, 159 N.E. 289, 292; City of Teague v. Stiles, Tex.Civ.App., 263 S.W.2d 623, 627 [12–14]; State v. McDonald, 88 Ariz. 1, 352 P.2d 343, 347 [3, 4]; 32 C.J.S. Evidence § 593, p. 446.

Nichols on Eminent Domain, Third Ed., Vol. 5, § 21.32, p. 291, says: "Forced sales usually involve transactions in which there is an element of compulsion either on the part of the seller who is obliged to act with undue haste, thereby affording him an inadequate period in which to effect a reasonable deal, or on the part of the purchaser who for purely personal reasons or necessities is compelled to pay a higher price than an ordinary purchaser would be willing to pay. However, it has been said that there is a presumption, in the technical and proper meaning of that word, that the price of land sold was fixed freely and not under compulsion. *In the absence of evidence warranting a finding that a sale is made under such compulsion as to make the price inadmissible as evidence of value, consideration may be given to the sale.*" (Our italics.) The case cited in support of the foregoing text is Epstein v. Boston Housing Authority, 317 Mass. 297, 58 N.E.2d 135, 138, 139. The court there held that while the burden to prove that the price at which similar property in the same neighborhood sold was fixed by fair bargaining and not by compulsion was on the party offering the price as evidence of value, such burden was discharged prima facie by the aid of a presumption that the price of land sold was in fact fixed freely

and not under compulsion and that the burden of going forward with evidence to show that a particular sale was not voluntary shifted to the opposite party.

Of the cases heretofore cited, all except one held only that the trial court did not err in excluding testimony because the offerer had failed to prove that the sale involved was voluntary. Hannan v. United States, supra; Wright v. Commonwealth, supra; Kankakee Park Dist. v. Heidenreich, supra; City of Teague v. Stiles, supra. Only State v. McDonald, supra, held the trial court had committed reversible error in having admitted evidence because it was not affirmatively shown that the sale was voluntary. It is important to notice that we are not dealing with a situation in which the offerer's evidence affirmatively showed that the sale involved was a compulsory sale or where there was evidence from which a trial judge reasonably should have concluded that the sale involved was not voluntary, for, in those instances, it is apparent that it would certainly not be error to exclude such evidence and usually would be error to admit it. See, e. g., Congregation of the Mission of St. Vincent De Paul v. Commonwealth, 336 Mass. 357, 145 N.E.2d 681, 682 [4–6].

Two cases involving the precise factual situation which appears in the present case are City of Chicago v. Vaccarro, 408 Ill. 587, 97 N.E.2d 766, 773 [12–15], and South Park Commissioners v. Livingston, 344 Ill. 368, 176 N.E. 546, 550 [15]. In the Vaccarro case, a witness testified to the price received for the sale of a certain lot in the vicinity of the property being condemned and said that the owner had listed the lot with him for sale but that he (the witness) knew nothing about the owner or of the circumstances which brought about the sale or whether the owner was compelled to sell the property. That is precisely the situation presented in the present case, i. e., the present witnesses testified that they were familiar with the property but did not know the circumstances of the sale. The Illinois court held in the Vaccarro case that the "trial court did not abuse its discretion in refusing to exclude evidence of this sale on the ground that the sale was not a voluntary sale." 97 N.E.2d 766. Apparently the decision was based on the proposition that inasmuch as there was no affirmative showing that the sale was made under compulsion, the question whether the testimony should have been admitted was a matter largely within the discretion of the trial court. See again South Park Commissioners v. Livingston, supra.

The Massachusetts court in the Epstein case, supra, said:

"Doubtless the burden of proof that the price was fixed by fair bargaining or bidding, and not by some form of compulsion preventing the normal operation of the self interest of buyer and seller, is on the party offering the price as evidence of value. Burley v. Old Colony R. Co., 219 Mass. 483, 485, 107 N.E. 365; Wright v. Commonwealth, 286 Mass. 371, 374, 190 N.E. 593. It does not follow, however, that the party offering the evidence must begin by proving that there was no form of compulsion, either suggested or conceivable, such as duress, fraud, or imperative need for immediate cash at any cost, that would preclude a free market. Free bargaining or bidding is normal and customary in business transactions, and compulsion is both abnormal and unusual.

"The propriety of an inference, or even a technical presumption, that the condition of a person or thing, or the conduct of a person, is normal and customary, has often been recognized. * * *

"Evidence of the price received from sales of comparable property is so necessary in order to bring extravagant appraisals by real estate experts into comparison with realities, that the introduction of such evidence ought not to be made so difficult as to be impracticable. We think that there is a presumption, in the technical and proper meaning of that word, that the

price of land sold was fixed freely and not under compulsion." 58 N.E.2d 138 [6] [7] [8].

It seems to us that there is another consideration of some importance in determining whether the trial court erred in admitting this testimony. That is the fact that the only witnesses adduced by plaintiff who testified to similar sales were the two experts on value. Those witnesses testified that they took the similar sales into account in arriving at their opinions as to value; one of them arrived at the same value by theories under which no consideration was given to the so-called similar sales. Thus, it seems apparent that the testimony in the present case was not offered as independent evidence of value, but rather as indicating one of the factors, among others, the expert witnesses had considered in arriving at their opinions as to value.

■ ■ While an expert witness should have made careful inquiry into the facts upon which he bases his opinion and should know whether a similar sale he mentions was or was not voluntary, still we are of the view that it was not error in this case for the trial court to have admitted the evidence as to similar sales in the vicinity not too remote from the date of taking in point of time, even though the offerer of that evidence did not adduce affirmative proof that the sales were voluntary where, as here, there was nothing to indicate that the sales were not voluntary and where, as here, the evidence was offered as one of the factors which the expert witnesses considered, along with others, in arriving at their ultimate opinions as to the value of the property at the time of taking.

■ ■ Defendants contend that the verdict is grossly inadequate and not based upon competent evidence. They argue that the valuations of plaintiff's experts were based upon irrelevant and inadmissible evidence and that those experts disregarded certain other evidence and engaged in speculation in arriving at their opinions as to value. Defendants' properly preserved complaints as to the admissibility of evidence have been heretofore considered and, irrespective of all else, it appears that plaintiff adduced evidence that the fair market value of the property at the time of taking was $19,400 to $21,000 through the testimony of experts whose qualifications were not questioned. That testimony, together with defendants' evidence, constituted substantial evidence from which a jury reasonably could have found that the fair market value of defendants' property at the time of taking was $25,000. Defendants' arguments are directed at the credibility and weight of plaintiff's evidence rather than at its substantiality. The conflicts in the evidence as to value were for the jury to resolve. Kansas City v. Thomson, Mo., 208 S.W.2d 216, 220 [7–9].

■ Defendants' contentions that the court erred in striking testimony to the effect that the location of the highway caused a tremendous upset in the neighborhood in property values, and that the court erred in striking the testimony of defendant Joseph Meissner to the effect that the property he acquired on December 29, 1955, to replace the condemned property cost approximately $49,000, have not been properly preserved for appellate review in that no mention of those matters was included in defendants' motion for new trial. Civil Rule 79.03, V.A.M.R.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.