STATE ex rel. STATE HIGHWAY COM-
MISSION of Missouri, Plaintiff,
Appellant-Respondent,

v.

Howard G. KEMPER et al., exceptions of
George W. Kropp and Leona W. Kropp,
Defendants, Respondents-Appellants.

Nos. 36649, 36658.

Missouri Court of Appeals,
St. Louis District.

Oct. 19, 1976.

Bruce A. Ring, Richard E. Baker, St. Louis, for appellants.

Lester H. Goldman, St. Louis, for respondent.

STEWART, Judge.

This is a condemnation proceeding initiated by plaintiff to condemn all rights of direct access between Interstate Route 44 and abutting land in the City of Eureka, Missouri. Upon trial of the exceptions of George W. Kropp and Leona W. Kropp, hereafter called defendants, judgment was entered in favor of defendants in the sum of $3,000.00.

Defendants appeal contending that the judgment as to damages in the sum of $3,000.00 is inadequate because it was not within the range of the evidence.

Plaintiff contends that defendants' property did not abut the highway and that they did not have direct access to the highway prior to the taking and therefore they suffered no damage. Plaintiff also contends that any damage defendants may have suffered was compensated for in the awards made to abutting owners over whose property defendants claimed a right of entry to the highway. We reverse as to the measure of damages only.

Defendants question plaintiff's right to be heard on the issues raised in this appeal. Plaintiff filed a notice of appeal but did not perfect the appeal. This is no impediment to our consideration of the issues raised. When the party who carries the burden of proof appeals, the court is required to determine whether that party is entitled to recover under the law and the evidence of record, when those issues are raised on appeal by the respondent.

*Schmittzehe v. City of Cape Girardeau,* 327 S.W.2d 918[1] (Mo.1959).

We consider first, the contentions of plaintiff. In doing so we view the evidence and the reasonable inferences arising therefrom in the light most favorable to the defendants. *Zipp v. Gasen's Drug Stores, Inc.,* 449 S.W.2d 612, 616 (Mo.1970).

In 1954 plaintiff condemned a portion of the properties of Ruprecht Material Co., hereafter called Ruprecht, and James W. Anderson, hereafter called Anderson. These properties abutted the south side of Highway 66 in Eureka, Missouri. The strip of land condemned was approximately 100 ft. wide with the south line parallel to the highway. An additional parcel was taken as an easement to provide an entrance to the properties of Ruprecht and Anderson. The latter was referred to as the "notch". The "notch" encompassed about 0.14 acres. 0.12 acres was taken from the Ruprecht property and .02 acres from Anderson. It extended 110 feet south from the south line of the 100 feet originally taken and was 60 feet wide.

In July of 1956, defendant, George W. Kropp[1] purchased a 15 acre tract of land. The tract was described as kite shaped. The north line borders on the Ruprecht tract, the east line borders on the Anderson tract. The south line is along the right of way of the St. Louis San Francisco Railroad (Frisco). What would be considered the western boundary is the right of way of the Missouri Pacific Railroad. The right of way of each of the railroads sweep in curves toward the southwest and converge to form the southwestern corner of defendants' property. The south line of the Ruprecht property which is the north line of defendants' property is the center line of what is designated as Blakely Road, sometimes referred to as Antire Road. This is an abandoned roadway. This road as indicated on the plats terminates on the east at

---

1. The property is held in the name of Mr. Kropp. Mrs. Kropp is a defendant for whatever marital right she may have.

the right of way of the Frisco RR and on the west at the right of way of the Missouri Pacific RR. It has no connection with any other public road. The western terminus of the "notch" above described is about 40 feet north of the center line of Blakley Road and the eastern terminus is about 50 feet north of the center line of that road.

The rough diagram attached may assist in visualizing the location and in understanding the issues presented in this appeal.

When Mr. Kropp purchased the property in 1956 he entered from the eastbound lane of Highway 66 (now I–44) onto a macadam road which had been constructed by the Highway Department on the right of way. This road extended south from the highway to a point short of the Blakely Road right of way. The macadam road was about 20 feet wide, it thus did not cover the entire width of the "notch". There was rock and dirt fill on either side of the macadam road. Kropp traveled over the macadam road and crossed over Blakely Road to reach the property. His use of this entry could readily be observed by persons on the Ruprecht property.

After purchase of the property he traveled that route by motor vehicle on an average of once a month. In late 1956 he improved his entry by putting a culvert pipe under the roadway on the Ruprecht property between the south end of the "notch" and the north side of Blakely Road. He also put two or three loads of rock on the roadway.

Commencing in 1959 George Weber, a farm operator in Eureka, entered into an agreement with defendants to farm the Kropp property. Mr. Weber raised wheat and corn. In the farming operation he brought plows, tillers, combines and trucks upon the property. He used the entry described by Mr. Kropp which was south from the eastbound slab of the highway through the "notch" and across a small portion of the Ruprecht property between the "notch" and the Kropp property.

Defendants and Mr. Weber continued use of this means of entry until mid 1970 when Interstate 44 was rendered inaccessible by reason of a trench about 10 to 15 feet deep across the macadam road within the highway right-of-way. This work was done on behalf of the Highway Department. After that time the property of the defendants was landlocked.

Plaintiff argues that defendants' property did not abut upon the highway therefore they are not damaged. It also states that defendants had no direct access to the highway. The Highway Commission of Missouri cites as authority for these contentions, only, MAI 3.02 and Missouri Constitution Article I Section 26. The former is the damage instruction in condemnation. The latter provides that ". . . private property shall not be taken or damaged for public use without just compensation." Neither has been helpful in our determination of the issues.

■ Contrary to plaintiff's contention it has long been recognized that one who has been deprived of reasonable means of access to the general systems of streets and highways has suffered an injury special or peculiar to him and he is entitled to compensation. *Rude v. City of St. Louis*, 93 Mo. 408, 415, 6 S.W. 257 (1887). Generally it is only the abutting owner who suffers damages but the right to such damage is not confined to the abutting owner.

The principal involved has received expression in 29A C.J.S. Eminent Domain § 122, pp. 485–486:

"Where access is entirely cut off, or the property owner is otherwise entitled to compensation, he should not be denied compensation merely because his property does not abut on the street or highway."

In 2, Nichols on Eminent Domain, p. 6–82, § 6.32[2], (3rd Ed., 1975), it is said:

". . . if there is only one means of access from the parcel of land over other private property to the public ways and that means is destroyed by the taking of the land over which the owner had a right to pass, whether such land belonged to him or to others, his land thereby cut off is taken and he is entitled to compensation."

The principal is sound, and while no case has specifically ruled this point in Missouri it was referred to with approval in *Applegate v. Director General of Chicago, R.I. & P. Ry. Co.*, 205 Mo.App. 611, 226 S.W. 628 (1920). See also *Christy v. Chicago, B & Q R. Co.*, 240 Mo.App. 632, 212 S.W.2d 476 (1948). Closely akin to our case and holding the principal applicable is *Munn v. City of Boston*, 183 Mass. 421, 67 N.E. 312 (1903).

See also *Prymek v. Washington County,* 229 Iowa 1249, 296 N.W. 467 (1941).

Defendants may recover if they can show that the actions of plaintiff have deprived them of access to the general system of roads and streets.

■ The remaining issue in the first portion of plaintiff's first point is whether there was sufficient evidence to warrant the jury in finding that defendants had access to the highway. Plaintiff's point while not wholly defective is somewhat vague. It argues that defendant could have had no access to the highway because access was taken by the 1954 condemnation. It also contends that the "notch" created a private right of entrance to the properties of Ruprecht and Anderson to the exclusion of the public generally, and in particular, to defendants' predecessor and thus defendants. Plaintiff cites no authority in support of these arguments.

In the 1954 condemnation proceeding the State established a means of access to the highway from the Ruprecht and Anderson properties by way of the "notch". It is apparent that access to the highway was not taken in the 1954 condemnation proceeding. It was specifically preserved. Public funds were expended in creating the way referred to as the "notch". It thus could not have been a private right of way. Public funds may be expended only for public purposes. *Bowman v. Kansas City,* 233 S.W.2d 26 (Mo. banc 1950).

Defendants' verdict directing instruction submitted alternate theories of recovery. One of the submissions required a finding that defendants had acquired an easement by prescription over the land of Ruprecht to the "notch" then to the highway. Plaintiff did not specifically object to the giving of the instruction, as to form or as to substance. The propriety of the instruction is not before us.

From a review of the facts set out above we can say that there was sufficient substantial evidence from which the jury could find that defendant had established an easement by prescription across the small portion of the Ruprecht property from the north line of defendants' property to the 60 foot wide right-of-way easement and hence to the highway. Defendants had made use of the way starting in the latter part of 1956 when he put a culvert into the road on the Ruprecht property.

In this case the jury found that defendants had access to the highway. When the plaintiff condemned all access to the highway defendants' property became landlocked. Defendants thus suffered damages that were not common to the public at large but peculiar and special to defendants. Defendants were proper and necessary parties to this action. The court did not err when it failed to sustain plaintiff's motions to dismiss defendants' exceptions.

Plaintiff points out that the exceptions of Ruprecht had been settled and the exceptions of Anderson were determined by judgment.[2] It then argues, "Accordingly, under the doctrines of res judicata and collateral estoppel, the Kropps had no case left in any event (if arguendo, they ever had a case) because they were named only in respect to those two parcels. Accordingly, the motion to dismiss should have been sustained on these grounds also, and should now be sustained." Plaintiff does not develop its argument and cites us no authority for its conclusions. As indicated above defendants suffered damage to their property which was special and peculiar to them. *Applegate v. Director General,* etc., 205 Mo. App. 611, 226 S.W. 628 (1920). Defendants' loss was not encompassed within the taking of Ruprecht's or Anderson's right of access to the highway. In the taking of defendants' right of access to the highway the defendants' property became landlocked resulting in damages peculiar to that property for which defendants were entitled to a separate award of damages. There was

---

2. Plaintiff also states that there was an agreement between Ruprecht and Kropp. We can find no such evidence of record. Counsel for the Highway Department in chambers stated,

". . . there was some side agreement between Ruprecht and Kropp which certainly is not binding on us . . . ." There is thus no evidence of any such agreement before us.

sufficient evidence from which the jury could find that defendants suffered damage by reason of the condemnation of direct access to the highway in this case.

Defendants' contention is that the award of $3,000.00 as damages was inadequate because it was not within the range of damages and limits of proof established by the testimony in the case.

This contention requires a brief review of the evidence with respect to the damages. George Kropp, as owner of the property, testified that prior to the time that access to the property was terminated the property, as heavy industrial, had a value of $6,500.00 per acre or a total of $97,500.00. He testified that with no access to the property, after the taking, the property was worthless. Mr. Feco who qualified as an expert testified on behalf of the defendants that in his expert opinion the property, prior to the taking, had a value of $6,000.00 per acre or a total value, rounded out to $90,000.00. He was of the opinion that without access the property would have a total value of $1,500.00. The difference in value after the taking would be $88,500.00.

The plaintiff called Mr. Tom McReynolds as an expert witness. This witness testified that it was his opinion that the value of the entire Kropp property before August 15, 1968 was $7,500.00. His valuation was based upon the premise that there was no access to the property and that its highest and best use was as farm land. He testified that the value of the property after the taking was $7,500.00 and therefore defendants suffered no loss. On cross-examination Mr. McReynolds explained that he had valued the landlocked property at $7,500.00, "Because I think some day you would be able to get into it." He thought someone might pay that much for it. He then stated, "You ask if someone would pay this for it—I don't think they would." He concluded that if the property would remain land-locked for the foreseeable future the property would have no value.

██ In approaching the issue raised by defendants we first review the applicable general principles. The burden is upon the landowner to prove the extent of his damages. *State ex rel. Highway Commission of Missouri v. Cady,* 372 S.W.2d 639 (Mo.App. 1963). It is not incumbent on the condemnor to produce any evidence of damages. If the award of the jury is within the range of competent evidence it is supported by substantial evidence and will not be disturbed. *State ex rel. State Highway Commission v. Grissom,* 439 S.W.2d 13, 17 [7–8] (Mo.App. 1969).

Value appraisal appears to be more an art than a science, as witness the wide disparity of opinion of the experts found in the reported cases,[3] and in the case at hand. While the testimony of a qualified expert is said to constitute substantial evidence of value the jury must ultimately make the factual determination. The "opinion evidence is informatory and advisory in nature but in no way binding upon the jury, whose province it is to determine the credibility and weight thereof, 'in keeping with the general rule that a jury may believe all of the testimony of any witness or none of it, or may accept it in part or reject it in part, just as it finds the same to be true or false when considered in relation to the other testimony and the facts and circumstances of the case.' . . . And it has been pointed out frequently that a verdict may be responsive to the issue of damages although it does not find an amount in strict accordance with the claim of either party." *State ex rel. State Highway Commission v. Grissom, supra.*

In most of the cases which considered the underlying principle that the verdict must be within the "range of the evidence," the verdict of the jury was in an amount somewhere between opinions of the landowners' witnesses and the opinions of the condemn-

---

3. *State ex rel. State Highway Comm. v. Riss,* 432 S.W.2d 193 (Mo.1968). The value evidence ranged from $25,500 to $1,342,500. *State ex rel. State Highway Comm. v. Dockery,* 340 S.W.2d 689 (Mo.1960), with a range of $19,400 to $49,500. *State ex rel. State Highway Comm. v. Anderson,* 367 S.W.2d 809 (Mo.App.1963), $2,100 to $11,000.

ors' witnesses as to the damages occasioned to the landowner. The courts in those cases have refused to disturb the judgment entered upon the verdict of the jury whether the verdict is closer to the higher or to the lower evidence of damages. In *State ex rel. State Highway Comm. v. Riss,* 432 S.W.2d 193 (Mo.1968), the value evidence ranged from $25,000 to $1,342,500. A judgment of $125,000 was sustained. In *State ex rel. State Highway Comm. v. Dockery,* 340 S.W.2d 689 (Mo.1960) with a range of $19,400 to $49,500 a judgment in the sum of $25,000 was upheld. In *State ex rel. State Highway Comm. v. Anderson,* 367 S.W.2d 809 (Mo.App.1963) the range was $2,100 to $11,000 and the court affirmed a judgment of $3,775.

We have concluded, as discussed hereafter, the verdict in this case was lower than the evidence which was produced by the plaintiff.

The only case which we have found in Missouri which discusses this problem is *Jackson County v. Hesterberg,* 519 S.W.2d 537 (Mo.App.1975), in which Judge Dixon clarifies the general proposition saying l.c. 546: " . . . the rule is not that the verdict be within the range of the 'opinion' evidence alone when there is other evidence in the case; the rule is more properly stated that the verdict of the jury must be based upon all the evidence and a verdict without such support is not a proper verdict." As we read that case it does not specifically determine the issue which we face. It seems to turn on the prejudicial effect of the condemnor's evidence of value which had an erroneous basis.

The text writers have stated the general proposition to be that " . . . jurors cannot go outside the record evidence in making their award, and when the award exceeds the amount claimed by the landowner, or is less than the estimate of any witness, it may be set aside . . ." 30 C.J.S. Eminent Domain § 310, p. 154. In 5, Nichols on Eminent Domain, pp. 17–41, § 17.3, (3rd Edition, 1975), it is said: "The award may not be in excess of the amount claimed by the owner, nor should it be less than the lowest estimate of value testified to by a witness." Our independent research has disclosed cases which seem to support the views of the text writers, holding that the verdict may not be less than the lowest estimate of the witnesses. In *City of Grand Rapids v. Coit,* 149 Mich. 668, 113 N.W. 362 (1907), which followed the rule, however, no mention was made as to whether the low estimate was made by a witness for the landowner or of the condemnor. In *American Telephone and Telegraph Co. v. Walker,* 77 N.M. 755, 427 P.2d 267 (1967) and *Sallas v. State Road Department,* 220 So.2d 378 (Fla.App.1969), the only evidence of damages came from the landowners. The condemnor presented no evidence. The court in each case held that a verdict below the lowest amount that the evidence would sustain was outside the range of the evidence. The court set aside judgment below the lowest evidence of damages which were put into evidence by the landowner.

We agree with the text writers that the award may not exceed the highest evidence of damages. We are, however, unwilling to say that the verdict may not be lower than the estimate of any witness as was held in *Walker* and *Sallas,* supra. To so hold could lead to absurd results, particularly where the only evidence of damages is produced by the landowner. If in this case the only evidence on value had been that of the landowner, a verdict of less than $88,500.00 would have been outside the range of the evidence. The landowner still has the burden of proof and when his is the only evidence, the jury is at liberty to disbelieve any or all of the landowner's evidence. *State ex rel. Highway Commission v. Grissom,* supra. It could therefore return a verdict from no damage to damages not in excess of the highest estimate of damage placed before the jury. However, in accord with the general rule in other forms of litigation, when the condemnor introduces evidence of damages he is bound by his own evidence whether adduced on direct examination or on cross-examination. *Bridle Trail Ass'n v. O'Shanick,* 290 S.W.2d 401, 407[9] (Mo.App.1956). It thus follows that

absent other factors, a judgment is within the range of all of the evidence if it does not exceed an amount in excess of the highest amount of damages which the evidence will sustain and is not below the lowest amount shown by the party who does not have the burden of proof.

In applying these principals to this case we must analyze the testimony of Mr. McReynolds, the plaintiff's expert witness. First we note that the only evidence that came into the case on value was the opinion evidence of Mr. Kropp, Mr. Feco and Mr. McReynolds. The evidence of defendants would have sustained an award of up to $97,500.00. It is evident, however, that the jury did not give full credence to defendants' highest estimate of damages.

Plaintiff insists that the net effect of Mr. McReynolds' testimony was that defendants suffered no loss and therefore the verdict of $3,000.00 was within the range of the evidence. Mr. McReynolds did testify on direct examination that the value of the property before the rights of access were condemned was $7,500.00 and that it had the same value afterward. He testified that there were no damages because there was no access to the property before or after access rights were condemned. On cross-examination he explained that he had placed the value of $7,500.00 on the property because of the possibility that the owner "might be able to obtain access." This is tantamount to saying that with access the property had a minimum value of $7,500.00. The jury in returning a verdict for defendants, of necessity found that defendants had access to the highway prior to the condemnation. Mr. McReynolds further testified that if access to the property could not be obtained the property would have no value.[4] There is no evidence of record that would warrant a jury finding that access could ever be obtained to this property. The evidence of the plaintiff thus establishes that the loss to defendants was at least $7,500.00. The plaintiff being bound by its own evidence may not contend that a verdict lower than that shown by such evidence is within the range of the evidence.

We conclude that the verdict of the jury was outside the range of the evidence and thus it was not supported by substantial evidence.

The judgment is reversed and remanded for a new trial on the measure of damages only.

CLEMENS, P. J., and DOWD, J., concur.

4. [Attorney for Defendants] "Q. Nevertheless you are contending it's worth $500.00 an acre.

[Mr. McReynolds] A. I think somebody might pay that much for it.

Q. You are to give us your expert opinion what that property is worth. 'Might', 'somebody' and all that is very qualifying.

A. It certainly is. This is a very qualifying piece of property, as long as you bring up the word. You ask if somebody would pay this for it—I don't think they would.

Q. Then why are you saying—

A. I could tell you it's worth nothing. If it's absolutely landlocked and going to be absolutely landlocked through eternity, then it isn't going to be worth anything.

Q. You have to take into consideration the use you can make of the property now and in the foreseeable future, isn't that the way appraisers value property?

A. Yes.

Q. You are not talking about twenty years or a hundred years, are you?

A. That goes pretty far.

Q. So this land is in the foreseeable future landlocked?

A. I don't know about the foreseeable future—if you are not going to be able to get on this property, then it doesn't have any value.

Q. If you are and the property is landlocked and in the foreseeable future going to remain that way, what is your value of it?

A. I would think nobody would buy it."