Belknap,
June 26, 1930.

TILTON *v*. DAVID P. SHARPE.

*Thomas P. Cheney* and *Stanton Owen*, for the plaintiff.

*Robert W. Upton* (by brief and orally), for the defendant.

SNOW, J. The trial justice closes his recital of the facts found with the general finding and conclusion: "Upon all the evidence at both hearings the Court finds that, while an entrance near the corner of School and Main Streets as proposed by the defendant and an exit on Main Street are necessary in order to enable the defendant to transact the business which he proposes to transact profitably, such use of the property would be accompanied by unusual hazard or danger of accidents to pedestrians and operators of motor vehicles; that, in view of all the circumstances the danger of accident would be so great that the proposed use of the property would be unreasonable and would constitute a public nuisance." To this the defendant specially excepts because both the conclusion and such general finding purport to be based upon matters in evidence not found and reported as facts, and are therefore improper and unwarranted. The defendant seasonably requested the court to give his decision in writing, stating the facts found and his rulings of law, as required under P. L., c. 316, s. 12. This exception therefore presents preliminary questions as to the measure of the defendant's rights under the statute and whether they have been denied.

It was not a common-law function of the court to make special findings of fact. The rule was *"Ad questiones facti non respondent judices."* Broom, Leg. Max. (9th *ed.,*) *p.* 70; *First National Bank* v. *Bank*, 152 Ill. 296, 301. The statutory requirement first appeared in an act remodeling the judiciary. Laws 1855, *c.* 1659. After authorizing the trial of civil actions in some cases by the court, *s.* 27 of the act provides that "The decision of the court shall be given in writing, if either of the parties desire it, stating first the facts found, and then the conclusion of law upon them, which shall be filed and recorded" and that "either party may except to the decision upon any matter of law . . . involved in such decision, in the same manner, and with the same effects, as upon a trial by jury." The statute was made to apply to the trial of issues in equity by G. L., *c.* 208, *s.* 5 (1878). While the language of the statute has undergone changes in phraseology in subsequent reënactments (G. S., *c.* 189, *s.* 5; Laws 1870, *c.* 2, *s.* 3; G. L., *c.* 208, *s.* 5; P. S., *c.* 204, *s.* 10 and P. L., *c.* 316, *s.* 12) no change in the meaning appears to have been intended. The finding of the facts which was formerly discretionary with the court

was made mandatory by the statute when seasonably requested. The design of the statutory procedure was to provide a simple and expeditious method of presenting to the law court the questions of law arising on the facts proven, as distinguished from the evidence. *Burnham* v. *McQuesten*, 48 N. H. 446, 451; *Moynihan* v. *Brennan*, 77 N. H. 273; *Peebles* v. *Rand*, 43 N. H. 337, 342. Under the statute the findings of the court stand precisely as would like special findings by a jury (*Willard* v. *Stevens*, 24 N. H. 271, 276; *Richardson* v. *Weare*, 62 N. H. 80), or the findings of a referee. *Wilson* v. *Atwood*, 81 N. H. 61, 63; *Eastern Elec. Co.* v. *Ekdahl*, *ante*, 339. In either case the facts proven and found take the place of the evidence which becomes immaterial. The party invoking the statute is entitled to have the facts found separately and with such fulness and detail as to enable him to fairly test the correctness of the legal conclusions. 26 R. C. L., Trial, ss. 98, 99. A record made upon the statutory request is presumed to contain all the proved facts which the court deemed material and essential to his decision so as to present the question whether the judgment is a necessary conclusion therefrom.

The question of reasonable use is one of fact, but, the fact when found, is generally determinative of the rights of the parties. *True* v. *McAlpine*, 81 N. H. 314. A use is legal or illegal according as it is reasonable or unreasonable. The finding here that the use is unreasonable is therefore, for all practical purposes, tantamount to a ruling. *Eastern Elec. Co.* v. *Ekdahl*, *supra*. In some cases a finding as to the reasonableness of a use accompanied by a mere description of the physical situation would be a sufficient compliance with the requirements of the statute, while in other cases such a. limited record would be a practical denial of the party's rights thereunder. Under the circumstances presented by the record here, as respects the proposed entrance at the point B (see plan), the mere recital of the finding that the proposed use would be unreasonable followed by a decree, manifestly would not accord the defendant the rights which the statute contemplates. While the statement specially excepted to is enigmatical, it is capable of an interpretation consistent with the performance of the court's statutory duty. The scheme and context of the report, in view of the statutory requirement, would justify the interpretation that the assertion "that the proposed use would be unreasonable and would constitute a . . . . nuisance" is stated as a deduction from the other facts reported, and that the record is intended to present the question of law whether such conclusion is supported by the special facts found. On this view the

procedural question raised by the defendant's exceptions would become immaterial and the case would then be here on the facts and not on the evidence. Ordinarily when the record of a transferred case is ambiguous, the appropriate procedure is to refer it back for amendment. *Gerry* v. *Neugebauer*, 83 N. H. 23, and cases cited. But in view of the urgency here for a prompt decision, the case will be considered on this interpretation of the record, leaving it to the parties, or either of them, to apply for such an amendment, showing this interpretation to be inconsistent with the trial court's intended meaning. In the event of obtaining such an amendment the additional subsidiary facts found by the court and entering into the result reached by him will constitute the amendment.

The defendant's land, on which he has constructed a gasoline filling station, is a corner lot having a southerly frontage of forty-six feet on Main street and an easterly frontage of ninety feet on School street. The defendant's proposal, as stated on the present transfer, is (1) to serve south going traffic on School street by an entrance twenty feet in width near the northerly line of his premises at a point designated A and by an exit on Main street of like width designated C, the westerly line of which shall be at least ten feet easterly from the building on the adjoining lot to the west, (2) to serve west going traffic on Main street by an entrance ten feet in width at the southeasterly corner of his lot, designated B and by the proposed exit to Main street at point C. The plaintiff makes no objection to the entrance at A but does object to an entrance at B and to an exit at C. It is to the vehicular use of the sidewalk at the two latter points in the manner stated that the special findings appear to be more particularly addressed. As the reasonableness of the proposed use at one of these points is not necessarily determinative of the reasonableness of the contemplated use at the other, the validity of the conclusion as to each will be separately considered.

Among the general facts bearing on the reasonableness of the proposed uses are the following. Main street is a section of the Daniel Webster highway. On the easterly side of School street are the post office and town hall and beyond a hotel, while to the west of the defendant's lot are business blocks containing the principal stores, the banks and the railroad station. The lot is thus approximately at the center of the business section of the village and the travel upon the sidewalk adjacent thereto is more congested than at any other place therein. The village, which is partly in the town of Tilton and partly in the town of Northfield, has a population of

about thirty-five hundred. Main street is sixty feet in width at the westerly line of the defendant's premises and much wider easterly thereof. A traffic signal opposite the center of the lot, and forty feet distant from the curbing, is in line with two small parks to the east and divides the opposing traffic so as to constitute the portion of the street adjacent to the lot a one way thoroughfare forty feet in width for traffic moving westerly. Between this signal and park I is an opening sufficiently wide to admit of the passage of an automobile, but traffic going east on Main street bound for School is required to pass to the south of the park, while traffic from Northfield bound for School street, or westerly on Main, is required to pass east of said park. There are two filling stations at the curb on the south side of Main street a short distance from the premises. The patronage which the defendant expects to serve is mainly limited to traffic passing southerly on School street and westerly on Main, and the number of vehicles likely to patronize his filling station if in operation would be from thirty-three to fifty per day. The defendant has expended a substantial sum in the construction on his lot of a drive-in type of filling station. This kind of station, which contemplates two passageways to the street, is in common use in the state and, under ordinary conditions, is the safest type. The plaintiff makes no objection to its use with ways to and from School street. The great bulk of the traffic passing the lot, however, is by Main street. An entrance to Main suitable for the use of automobiles is necessary to enable the defendant to use his premises to the best advantage for the business he proposes to conduct, and the rental value of his lot will be much less without it than with it. A passway from the premises to Main street can be used by motor vehicles without unusual hazard or danger if travelers on the streets and sidewalks and the operators of vehicles entering or leaving the premises exercise reasonable care; but its use in the manner proposed would be accompanied with much danger of accident in the absence of such care by either.

The more vital findings relied upon in support of the decree, so far as it enjoins an entrance at B, are in substance as follows. A traffic signal maintained beside the crosswalk at the entrance to School street from Main, designed to divide the traffic to and from School, requires vehicles to pass to its right. This is found to be a reasonable regulation, and in accordance with the law of the road. P. L., c. 90, s. 1. This traffic signal does not permit an automobile from Main street to cross the crosswalk to the left of the signal, and

indicates to a motorist proceeding south on School street that he has a road to Main clear of vehicular traffic. If traffic were to be permitted to enter the defendant's premises at B in the manner he proposes, passing over the crosswalk to the left of the signal, the usefulness of the signal as a safeguard against accident would in a measure be destroyed. Pedestrians passing westerly on the crosswalk, before reaching the traffic signal, cross the westerly moving traffic on Main street entering School, including that entering Main from the south just east of School. After passing the signal they would have to cross the line of traffic moving south from School to Main. If the defendant's entrance at B were permitted, they would also at the same time be in the line of automobile traffic entering the defendant's lot from Main, and the converging street from the south, and the latter traffic would be approaching them from behind and on an acute angle. These facts in the situation shown support the finding that the proposed use of the defendant's property by means of an entrance at B would be accompanied by unusual hazard or danger of accidents to pedestrians as well as to operators of motor vehicles. As it does not appear that reasonable access to and from said lot may not be had at other points not involving such hazards, such facts support the finding that such use would be unreasonable.

The only special facts having any tendency to show that the proposed exit at C would present a dangerous situation is the presence upon the adjoining lot to the west of a brick block the front of which is flush with the northerly side of the sidewalk, and the existence of an angle in the street near the defendant's line; from which facts the court finds that such premises and adjoining sidewalk are not visible to pedestrians passing easterly until they reach a point close to the westerly line of the premises. It conclusively appears, however, that the defendant's entire lot would be visible to such a pedestrian while at a distance of ten feet from the most westerly line of the proposed passageway. As the angle shown by the plan is slight, it is clear that the passageway itself would be visible for a much longer distance. The width of the sidewalk is eleven feet and that of the proposed way twenty. In view of the necessary limitation of the speed of a departing car about to make a right angle turn into traffic, the danger to pedestrians would seem to be no greater than that which is ordinarily incident to the use of the streets in any of our thickly settled villages or cities, where, of common knowledge, there are numerous public and private ways with less opportunity for self-protection than here. We have to conclude that the situation

presents no such unusual hazard to pedestrians as to justify an order denying the owner access to the street for the contemplated use of his property. *Tilton* v. *Sharpe, ante,* 43, 47. In fact the finding that such use is unreasonable appears to be based, not so much upon any disadvantage to the public, as it is on a supposed absence of any advantage to the owner, for the court finds that "automobiles entering at Point A, after being served, could leave by way of School Street as well as by way of Main Street; that an exit into Main Street is not necessary so far as traffic from School Street is concerned and would not be of any benefit to the defendant." The conclusion is a *non sequitur.* While the relative advantage and disadvantage to the parties are elements to be weighed in determining the reasonableness of a use of property abutting on a public street (*Id.;* see *Hatch* v. *Hillsgrove* 83 N. H. 91, 95, 96), the convenience as well as the necessity of the owner entitles him to access and egress to and from his land at all points in the absence of some peril to the public out of the ordinary. The physical situation forbids the conclusion that an exit on Main street would not convene the defendant's patrons intending to proceed westerly on said street. The fact that they could also reach that street by way of School does not prove that a Main street exit would be of no benefit to the defendant. We have to conclude that, so far as the general finding of unreasonable use is intended to apply to an exit from the defendant's lot to Main street at C, it is not supported by the special findings, and that the decree, so far as it enjoins such use, is therefore unwarranted.

The restraining orders sought relate to the sidewalk on Main street, but neither bill nor answer specifies any particular portion thereof, or designates any limit to the direction of the expected travel across it. While the answer complained of the obstruction of "the entrance or approach to defendant's land from said Main street," and asserts his right to orders which will permit the passage of vehicles "to and from Main street," the issue tried, at the first hearing, so far as disclosed by the transfer, was the defendant's right to an exit on Main street at a point near the westerly side of his lot for motor vehicles entering at points on School. On the present transfer, however, as we have seen, it is made plain that the proposed uses of the defendant's premises, so far as controverted and tried, are by an entrance at B and by an exit at C for cars entering at either A or B. The orders, as made, and as affirmed on the second trial, are general in terms, namely, "that the injunction prohibiting the defendant from tearing up the sidewalk be made permanent" and "that the

defendant's petition that the plaintiff be enjoined from maintaining its sidewalk as at present constructed be denied." It is clear that such orders are too indefinite to fit the issues which have been tried and determined. As made, they would (1) not only inhibit an entrance to the defendant's lot at B which has been found to be an unreasonable use, but would (2) deny the defendant egress from his lot at C for cars entering from points on School street the finding of the unreasonableness of which use is not sustained, and would (3) enjoin the defendant from entrance to his lot at C,—the reasonableness of which appears not to have been specifically considered. On the record as it stands the order should be limited to enjoining the defendant's use of his lot by an entrance at B, and to enjoining the interference by the plaintiff with the defendant's right of egress at C for motor vehicles entering his premises from School street.

As the case has been twice transferred and the parties have mutually indicated a desire for a speedy determination of their rights, and in view of the fact that the bill and answer are in terms sufficiently broad to raise the issue of the right of the defendant to an entrance to, as well as an exit from, his premises at any point on Main street, the right of such an entrance at C for west bound traffic has been considered without prejudice to the rights of the parties to seek further findings addressed to this specific issue as well as the interpretation of the record already considered. It is our conclusion that it could not reasonably be found on the facts reported that such an entrance at C would be an unreasonable use of the defendant's premises, provided reasonable safeguards and traffic regulations are adopted. To say more in the present state of the record would seem to be supererogatory.

*Case discharged.*

All concurred.