JEANNE JASKOLKA

v.

CITY OF MANCHESTER

December 28, 1989

*Craig & Wenners P.A.*, of Manchester (*Vincent A. Wenners, Jr.*, and *Maureen E. Dunnigan* on the brief, and *Mr. Wenners* orally), for the plaintiff.

*Elmer T. Bourque*, City Solicitor (*Anthony F. Simon*, attorney, on the brief and orally), for the defendant.

BATCHELDER, J. The plaintiff, Jeanne Jaskolka, appeals a decision of the Superior Court (*Goode*, J.) denying her petition to be credited with continuous employment with the defendant, City of Manchester, since 1964. For the reasons that follow, we reverse and remand this case to the superior court, with the direction that the court make factual findings and rulings of law.

This suit arises from a dispute between the parties concerning whether the defendant has employed the plaintiff continuously since January, 1964, a period of service which would entitle her to certain salary and fringe benefits, and would allow her to retire now with a pension calculated under a non-contributory system existing before the current contributory plan was adopted. The plaintiff worked from January, 1964, to August, 1967, as secretary and administrative aide to Manchester's then mayor, Roland Vallee. This position constituted city employment. She then began employment as administrative aide for the Model City Agency (MCA) of the City of Manchester, in November, 1967, after what she testified at trial was a "leave of absence . . . without pay." The MCA program is sponsored and primarily funded by the federal government. The plaintiff continued in that capacity until October, 1975, when the MCA was discontinued. After expending what she refers to as five weeks of accumulated vacation time, the plaintiff began her current city employment, in December, 1975, with the City of Manchester Highway Department, in the Environmental Protection Division, Waste Water Treatment Facility.

The heart of this disagreement involves the plaintiff's employment with the MCA, from December, 1967, to October, 1975. The plaintiff contends that her work with the MCA was city employment and, therefore, must be credited to her for salary and fringe benefit purposes. Further, she asserts that her employment with

the city has been continuous from January, 1964, to the present. The city argues that the plaintiff's work at the MCA was not city work and does not contribute to her tenure as a city employee for the purposes of salary and fringe benefits. The city argues further that, assuming the plaintiff's tenure at the MCA was city employment, the plaintiff's service with the city has not been continuous from 1964 to the present.

The record contains copies of two letters, dated December 13, 1976, and May 12, 1977, which the plaintiff wrote to the then mayor of Manchester, Charles Stanton, in which she requested that her employment with the Highway Department be considered a transfer from her previous employment with the MCA, so that the years of employment with the MCA would be credited to her years of city service. The letter of May 12 referred to a conversation between the plaintiff and the mayor in which the mayor stated that he had referred the matter to the personnel department. No response to these letters appears in the trial record, nor is there any other evidence in the trial record of the steps the plaintiff took to contest the city's failure to credit her with prior service for the years before she began her current position.

The plaintiff filed a complaint against the city in superior court in April, 1982, and asked to be credited with continuous city service and to receive its attendant benefits. At trial she submitted a number of requests for findings of fact and rulings of law. After the trial, the court issued its decision, labelled "Findings, Rulings and Decree." The court began by noting that the plaintiff sought relief from an administrative finding but cited no statute under which the appeal could arise. The court, however, considered the plaintiff's petition as one for a writ of certiorari. Articulating no findings of fact or rulings of law, the court in one sentence addressed the merits of the plaintiff's claim as follows: "Upon considering the testimony presented, the exhibits, and arguments of counsel, this Court finds no error of law; nor is it persuaded by the balance of probabilities on the evidence presented that the decision of the defendant is unreasonable." Accordingly, the court dismissed the petition.

On appeal, the plaintiff makes three principal arguments. First, she contends that her petition should not have been accorded certiorari review because it was more in the nature of a declaratory judgment action under RSA 491:22, as, she asserts, she has not applied for prior service credit to the city's Board of Mayor and Aldermen. Second, the plaintiff asserts that the trial court's failure to make findings pursuant to RSA 491:15 or to issue a sufficiently

detailed order constituted reversible error. Finally, the plaintiff argues that, even under certiorari review, the trial court's order was unjust and unreasonable because it was against the weight of the evidence. We hold that certiorari review was appropriate in this case, but that the trial court's failure to make findings pursuant to RSA 491:15 or to issue a sufficiently detailed order constituted reversible error. In light of our holding, we need not reach the plaintiff's third argument.

## I. *Certiorari Review*

The plaintiff's assertion that her petition should have been treated as one for declaratory judgment, rather than one for a writ of certiorari, is without merit. A petition for a writ of certiorari provides judicial review of governmental administrative action when no statute authorizes an appeal. *See Chauffeurs Local Union No. 633 v. Silver Bro's, Inc.,* 122 N.H. 1035, 1036–37, 453 A.2d 1292, 1293 (1982). The appropriate standard of review on certiorari is whether the agency acted illegally concerning its "jurisdiction, authority or observance of the law . . . or has abused its discretion or acted arbitrarily or capriciously." *State v. Brackett,* 122 N.H. 716, 718, 449 A.2d 1210, 1212 (1982) (citations omitted). A declaratory judgment action, in contrast, is available when "[a]ny person claiming a present legal equitable right or title" is faced with a claim adverse to that right or title. RSA 491:22. This case cannot properly be characterized as one for declaratory judgment, as the plaintiff lacks the requisite "present legal [or] equitable right or title" necessary for her case to proceed. The plaintiff seeks to obtain a judicial decree that she has the requisite number of continuous years of city service to entitle her to certain salary and fringe benefits, rather than already possessing those benefits and being faced with a threat of losing them. Certiorari review was appropriate here, as the plaintiff has requested prior service credit, and its attendant benefits, from what appears to be the appropriate administrative body, and been denied.

We conclude that the plaintiff exhausted her administrative remedies from certain documents submitted by the defendant, after oral argument. As noted above, the trial record contains copies of two letters that the plaintiff wrote to the mayor of Manchester concerning her request. One of the letters refers to the mayor's statement that he had referred the matter to the personnel department. These letters comprise all the evidence from the trial record as to whether the plaintiff had been officially denied prior service credit and as to the steps she had taken to appeal the denial.

As a result of this incomplete record, confusion developed at oral argument as to whether the plaintiff should have appealed the denial of her request to the city's Board of Mayor and Aldermen before filing her petition in superior court. In response to the court's request for documentation of the appeal procedure and its legal basis, *see* R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 42, at 31 (1984) (court can require parties to show that jurisdiction is proper or it may dismiss the case), the defendant submitted a document containing an affidavit from the city's personnel director, Wilbur L. Jenkins; the city's personnel ordinance; minutes from the personnel committee meetings at which the plaintiff's situation was considered; and minutes of the finance committee approving the personnel committee's recommendation to deny prior service credit to the plaintiff. The documents show that the plaintiff's request was denied by the city's personnel committee and that this denial was adopted by the city's finance committee. They do not show that the plaintiff should have appealed this denial to the Board of Mayor and Aldermen.

According to the minutes, the personnel committee denied the plaintiff's request on October 21, 1981, and the finance committee adopted the minutes of the personnel committee's October 21 meeting, on November 10, 1981. In Jenkins' affidavit he states that, as a matter of practice and as a result of Manchester Code section 18-64(c), the personnel committee acts as a review board for all classification and compensation matters. The personnel committee makes recommendations on these matters to the Board of Mayor and Aldermen, which approves or rejects them in its capacity as the finance committee. According to Jenkins, the entire membership of the Board of Mayor and Aldermen comprise the finance committee, although he cites no authority for this statement. The affidavit continues on to state that the personnel committee additionally functions as a review board to hear employee appeals from decisions of the personnel director. The Board of Mayor and Aldermen, acting as the finance committee, also reviews the personnel committee's decisions in these latter instances. The affidavit fails to state if the personnel committee's recommendations to the Board of Mayor and Aldermen constitute the final step in the administrative appeal process, or whether direct appeal to the Board of Mayor and Aldermen is possible.

The ordinance as presented to us, by itself, also does not answer the question whether the plaintiff should have appealed to the Board of Mayor and Aldermen, nor does it clearly support the

procedures outlined in Jenkins' affidavit. Section 18-64 makes the "personnel director or personnel committee" responsible for the "maintenance of . . . classification and compensation plans, including but not limited to the allocation of new or changed positions . . . and the preparation of recommendations to the board of mayor and aldermen on revisions to the plans. . . ." MANCHESTER CODE § 18-64(a). Weekly and hourly rates for different classes of positions "shall be changed only upon recommendation of the personnel director or the personnel committee and finance committee and amendment by the board of mayor and aldermen." CODE § 18-64(b).

Finally, employees have the right to request consideration of the classification and compensation plan for their position. The employee must first attempt to resolve the problem with the department head, and then, if unsuccessful, submit the matter to the personnel director or the personnel committee for a solution consistent with the plan. CODE § 18-64(c). This section of the code does not specify what happens in the event that the personnel committee, or personnel director, and the employee cannot arrive at a mutually acceptable solution. According to Jenkins' affidavit, the employee aggrieved by a decision of the personnel director would appeal to the personnel committee and the personnel committee would make a recommendation to the finance committee, which would then accept or reject it. Similarly, a decision of the personnel committee, in the first instance, would be recommended by the personnel committee to the finance committee, which would then accept or reject it. This position finds some support in section 18-64(b), described above. However, in our reading, Code section 18-64(b), which discusses recommendation by the personnel committee and amendment by the Board of Mayor and Aldermen, refers to changes in pay rates for different classes of positions and not to changes in an individual's classification and pay. Section 18-64(c) refers to requested changes in an individual's classification and pay but provides no recommendation and amendment procedure involving the personnel committee and Board of Mayor and Aldermen. Similarly, section 18-64(a) makes the personnel director or committee responsible for the allocation of new or changed positions, but it does not indicate to whom these allocation decisions are appealable. Thus, the ordinance does not tell us whether the plaintiff should have appealed to the Board of Mayor and Aldermen, nor does it clearly support the procedures outlined in the affidavit. It does not, consequently, set forth a sufficient foundation for us to state with certainty exactly what process the plaintiff should have followed. Given this uncertainty, and given the plaintiff's apparent efforts to utilize available review mechanisms, including writing to the mayor and having her case referred to the

personnel director and acted upon by the personnel and finance committees, we hold that the plaintiff was appropriately before the superior court.

 Our discussion of the applicable appeal procedure in this case and of the submitted documents requires us to address a final matter. Plaintiff moved to strike these submitted documents from the record, contending that they are unresponsive to our request, represent new and additional evidence not offered at trial, and do not set out the correct and complete administrative appeal mechanism. We deny the motion on the ground that the documents are responsive to our request. We also note that the plaintiff has offered no other evidence of an alternative appeal mechanism, and without these documents, her suit would be dismissed for lack of jurisdiction. We hold that certiorari review was appropriate here given the lack of a statutory judicial review procedure, and given both the uncertainty of the administrative review mechanism provided by the city and the plaintiff's attempt to appeal within this uncertain system.

## II. *RSA 491:15*

The plaintiff next argues that the trial court's failure to make findings pursuant to RSA 491:15 or to issue a sufficiently detailed order constitutes reversible error. We agree. At the administrative level neither factual findings nor rulings of law were made. The personnel committee minutes simply adopt the city solicitor's opinion that the plaintiff's term with the MCA was not city service. No basis for the opinion is given, and the opinion itself is not included in the record. As discussed above, at trial the plaintiff submitted to the court requests for findings of fact and rulings of law. The court ignored these requests entirely and enunciated neither findings of fact nor rulings of law in its order, leaving us, we note, nothing to review on appeal. The plaintiff contends that RSA 491:15 requires the trial court to state its findings when requested to do so. The statute provides: "The court or justice trying causes under RSA 491:13 and 491:14 shall, if either party requests it, give his decision in writing, stating the facts found and his rulings of law, which shall be filed and recorded." RSA 491:15. The defendant asserts that RSA 491:15 does not apply to writs of certiorari, as these are not specified in RSA 491:14, addressing equity procedure, and are not included in RSA 491:13, which applies to causes the court has authority to refer.

 Although these statutes do not refer explicitly to writs of certiorari, they do refer to "[s]uits in equity, . . . writs of mandamus and quo warranto, and other similar proceedings. . . ." RSA 491:14.

Mandamus and quo warranto, along with certiorari, are extraordinary writs and are issued only when specific circumstances warrant such action. R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1281, at 159–60 (1984). Specific inclusion of these two extraordinary writs in the statute, followed by the words "other similar proceedings," implies that the latter phrase describes proceedings of the same general kind as the first two; namely, extraordinary writs, of which certiorari is one. *See Davis v. Company*, 88 N.H. 204, 209, 185 A. 889, 892 (1936) (where general words follow particular words, they are to be construed as applicable to persons or things of same general class as those specified). Apparently, as evidenced by the language of the statute, the legislature intended to include writs of certiorari in the classification laid out in RSA 491:14.

 As the plaintiff mentions in her brief, in the past we have indicated such inclusion would not be inappropriate. *See Hardy v. State*, 122 N.H. 587, 590, 448 A.2d 382, 384 (1982) (stating, in case involving petition for writ of certiorari, that RSA 491:15 is only authority requiring a court to issue written opinion). This result fulfills the purpose of the statute, which is intended to provide a basis for appellate review of questions of law applicable to a case. *Taylor v. Davidson Rubber Co.*, 122 N.H. 428, 433, 445 A.2d 1119, 1122 (1982). One invoking RSA 491:15 "is entitled to have the facts found separately and with such fulness and detail as to enable him to fairly test the correctness of the legal conclusions." *Tilton v. Sharpe*, 84 N.H. 393, 396, 151 A. 452, 453 (1930) (discussing P.L. 316:12, the precursor to RSA 491:15). Pursuant to RSA 491:15, the trial court must enunciate its findings, in accordance with the plaintiff's request.

*Reversed and remanded.*

All concurred.