Hillsborough
No. 90-207

JEANNE JASKOLKA

v.

CITY OF MANCHESTER

March 13, 1991

*Craig & Wenners P.A.*, of Manchester (*Vincent A. Wenners, Jr.*, on the brief and orally), for the plaintiff.

*Elmer T. Bourque*, city solicitor (*Carolyn M. Kirby*, attorney, on the brief and orally), for the defendant.

BATCHELDER, J. The plaintiff, Jeanne Jaskolka, appeals the decision of the Superior Court (*Goode*, J.) denying her petition to be credited with continuous employment with the defendant, the City of Manchester (the City), since 1964. For the reasons that follow, we reverse and remand.

The plaintiff began employment with the City in January of 1964, as secretary and administrative aide to then Manchester Mayor Roland Vallee. She remained in that position until August of 1967. After what the plaintiff characterizes as "a leave of absence . . . without pay," she began work for the Model City Agency (MCA) of the City of Manchester in November, 1967. She remained with the MCA until October, 1975, when the MCA was discontinued. Following a period of several weeks which the plaintiff represents was used as "accumulated vacation time," she began working for the City of Manchester Highway Department, in the Environmental Protection Division, Waste Water Treatment Facility, where she is currently employed.

We note at the outset that this case is before this court for the second time. In *Jaskolka v. City of Manchester*, 132 N.H. 528, 567 A.2d 549 (1989), the plaintiff had filed a complaint against the City in superior court in April, 1982, and asked to be credited with continuous city service and to receive its attendant benefits. Articulating no findings of fact or rulings of law, the trial court dismissed the plaintiff's petition. On appeal, we remanded the case to the trial court in order for it to make the findings required by RSA 491:15. The trial court thereafter made findings of fact and rulings of law and again upheld the City's decision to deny the plaintiff credit for continuous employment with the City and all benefits accruing therefrom. It is from this decision that the plaintiff now appeals.

The threshold issue in this case is whether employment with the MCA was employment with the City of Manchester. The plaintiff maintains that the MCA was an agency of the City of Manchester, that she was continuously employed by the City from 1964 to the

present, and that the trial court abused its discretion and acted unreasonably in ruling otherwise. The City, on the other hand, characterizes the MCA as the creation of a unique federal program, which existed independent of the City of Manchester, and argues that the evidence was sufficient to support the trial court's ruling.

■ Both the plaintiff and the defendant urge this court to apply an incorrect standard of review. In order to determine the proper standard of review of the superior court's ruling, we look to the case's procedural posture. The plaintiff's petition contesting the City's denial of benefits was appropriately considered by the superior court on a writ of certiorari. *See id.* at 531, 567 A.2d at 551. Accordingly, "the scope of inquiry on appeal to this court is limited . . . to determining whether the trial court could reasonably have concluded as it did." *Runde v. City of Concord*, 128 N.H. 175, 177, 512 A.2d 408, 410 (1986).

The Demonstration Cities and Metropolitan Development Act of 1966, 42 U.S.C.A. §§ 3301 *et seq.* (West 1977), *authority terminated by* 42 U.S.C.A. § 5316 (West 1983), authorized the Secretary of Housing and Urban Development to provide financial and technical assistance enabling cities to plan and execute certain types of programs designed to improve the quality of urban life in the United States. 42 U.S.C.A. §§ 3301, 3302, *authority terminated by* 42 U.S.C.A. § 5316. Funding for the programs came from a grant to the "city demonstration agency" of 80% of the cost of administering approved comprehensive city demonstration programs. 42 U.S.C.A. § 3305(b), *authority terminated by* 42 U.S.C.A. § 5316. A "city demonstration agency" was defined as "[1] the city, [2] the county, or [3] any local public agency (State agency or instrumentality) established or designated by the local governing body of such city or county to administer the comprehensive city demonstration program." 42 U.S.C.A. § 3312(2) and (4), *authority terminated by* 42 U.S.C.A. § 5316. Neither party argues that the MCA was part of either the County of Hillsborough or the State of New Hampshire; thus, we conclude that, as a matter of federal law, the MCA was part of the City of Manchester. We do not need to reach the issue as to whether or not MCA employment automatically establishes city employee status, *compare Former Spec. Project Ass'n v. City of Norfolk*, 909 F.2d 89, 91–94 (4th Cir. 1990) (Model Cities Act did not create private right of action for employees) *with Members of Bridgeport Housing v. City of Bridgeport*, 646 F.2d 55, 62–63 (2d Cir.), *cert. denied*, 454 U.S. 897 (1981) (whether or not employees' right to bring claim for relief came

directly from Model Cities Act, employees could enforce rights through 42 U.S.C. § 1983), because we determine that the facts as presented to the trial court clearly demonstrated that the plaintiff was an employee of the City of Manchester.

First, there is no dispute that the MCA was created by a resolution of the city's Board of Mayor and Aldermen as "an Agency of the City of Manchester, New Hampshire." Although the City argues in its brief that the resolution was merely a "necessary prerequisite to receipt of financial assistance from the Federal Government," it ignores the attendant prerequisite that those funds be administered by a city, county, or state agency. *See* 42 U.S.C.A. §§ 3312(2) and (4).

Second, the plaintiff received pay and benefits similar to city employees, but, as the record shows, because there was no guarantee that a new position with the City would be available when the federal program was terminated, she was given a somewhat higher salary and more extensive vacation time than other city employees. Further, the plaintiff received payroll checks and W-2 forms from the City's payroll account, and her payroll stubs were marked "City of Manchester—Employee Earnings Statement." The personnel director for the City admitted at trial that paystubs for MCA employees were identical to those for other city employees. Also, the MCA was required to submit its bills to the City's finance office for review and payment, and the finance office audited MCA expenditures and dispensed the money needed to pay MCA employees.

Finally, the strongest evidence of her city employment was a letter dated September 19, 1975, from Elmer T. Bourque, Manchester City Solicitor, to Joseph J. Acorace, the City's finance officer. In this letter, Attorney Bourque was responding to the question of whether MCA employees were entitled to accumulated sick leave benefits on termination of their employment with the Model Cities Program. In the letter, he stated that the MCA had officially adopted the City Personnel Policy on August 24, 1972. He directed Mr. Acorace's attention to section 18-54(h) of the city ordinances, which provided that on *"termination from city service*, all sick leave credits shall be cancelled, except in case of retirement, duty disability retirement or death while in active service." (Emphasis added.) From his reading of the ordinance, Attorney Bourque concluded that "such sick credits are cancelled on termination from service." In this respect, Attorney Bourque equated subjection of MCA employees to the City Personnel Policy with placing their employment in the category of "city service."

With respect to the period prior to August 24, 1972, before the MCA adopted the City Personnel Policy, Attorney Bourque concluded that "there was no intention to provide sick leave benefits which were more liberal than those available to *other city employees.*" (Emphasis added.) It is apparent that the City of Manchester, through its solicitor, was eager, at least in 1975, to confer city employment status on MCA employees for the purpose of denying them access to accumulated sick leave benefits. The City cannot now deny that same employment status for the purpose of foreclosing the plaintiff's right to receive a pension after twenty years of city employment. In short, the City cannot turn the plaintiff's city employee status off or on to suit its own needs to conserve municipal funds.

■ The City also asserts that it did not possess the right to control MCA employees, and that such control is required to establish an employment relationship. In support of this position, the City maintains that the right to terminate the employment of MCA employees rested in the MCA and not in the City. However, we find the City's logic circular. If the MCA *was* an agency of the City of Manchester, then the right to terminate the service of employees did lie with the City, and the requisite control was present. Accordingly, we hold that employment with the MCA was employment with the City of Manchester. Therefore, we need not reach the plaintiff's argument that the City was estopped from denying her credit for city service for the years that she was employed by the MCA.

There still remains a hurdle, however, which the plaintiff must overcome before she can obtain a city pension; namely, she must show that her employment with the City was continuous for a period of twenty years. There are two periods in which the plaintiff's status as a city employee is unclear. First, there is a gap between her employment as an aide to the mayor and her position with the MCA in 1967. Also, there is a period of several weeks between the end of her MCA service and the beginning of her employment in the highway department in 1975.

At oral argument, the plaintiff conceded that there was sufficient evidence in the record to support the trial court's finding that there was a break in the plaintiff's city employment when she terminated her job in the mayor's office in 1967. Therefore, the plaintiff's continuous employment could not include the period during which she worked in the mayor's office.

■ Because the City denied the plaintiff's request for pension benefits on the ground that she was not an employee of the City when

she worked for the MCA, the City never considered the question whether the period in 1975 between the termination of her MCA employment and the beginning of her employment with the highway department constituted a break in city employment. Accordingly, we remand the case to the superior court with directions to return the case to the city's personnel committee for a determination of this factual issue.

We are mindful of the City's position that its pre-contributory retirement system places considerable financial burden on the City and has, therefore, been altered to alleviate this impact. However, the burden which this program places upon the City is not a justification for denying its benefits to a city worker if that person has, after twenty years of service, earned them.

*Reversed and remanded.*

All concurred.